## COMMONWEALTH *vs.* GEORGE W. STONE.

On the trial of a person indicted for cheating by false pretences, by representing that a bill of an insolvent bank was worth its nominal value, and passing it at that value, it is not necessary, in order to prove that the bill was worthless, to give evidence that none of the stockholders of the bank are solvent, or that they have already paid the amount of their stock.

Evidence, in such case, of the depreciated value of the bills of such bank, in the market, connected with evidence that the bank has refused to pay its bills, and that they are not passable as current bills, is competent to prove that the bill, which was passed by the defendant, was not worth its nominal value, and also to prove his fraudulent intent in passing it.

He who receives a bill of a broken bank, not knowing it to be such, and on a representation made to him that it is worth its nominal amount, does not take it at his own risk.

The question whether the passing of a bill of a broken bank in payment for an article purchased, and the receiving of good money in exchange, without any words concerning the bill, amount to a representation that the bill is worth what it purports to be, depends upon all the evidence of the attendant circumstances.

To prove that a defendant passed a worthless bank bill, with knowledge that it was such, evidence is admissible of his having in possession, and of his having passed, other similar bills.

The passing of a bill of a broken bank, at its nominal value, on a representation that it is of that value, by one who knows that it is nearly, if not quite worthless, is a punishable fraud, although the bill may be of some value.

An indictment alleged that the defendant falsely and knowingly pretended and represented to P. that a certain paper writing, in the form of a bank bill, was a good negotiable note and bank bill, and security for the payment of five dollars; that P., believing such pretence and representation, was thereby induced to deliver, and did deliver, to the defendant, certain goods, and certain good bank bills and current coins in exchange for said paper writing; and that the defendant thereupon delivered said paper writing to P. as a good negotiable note and bank bill, and security for five dollars; whereas said paper writing was not a good negotiable note and bank bill, and security for five dollars, as the defendant then well knew, &c. *Held,* that the indictment did not describe a genuine note of a worthless bank, but a counterfeit note of a real bank, or a note purporting to be of some bank that had no existence; and therefore that the indictment was not proved by evidence that the paper writing was a bill of a bank that had failed and ceased to pay its bills.

SHAW, C. J.   This case comes before the court by exceptions, from the municipal court.   The defendant was indicted for obtaining money by false pretences.   The means alleged in the indictment, by which the prisoner thus fraudulently obtained money, are, that he being a person of an evil disposition, and devising and intending by unlawful ways and means to obtain money, goods, and merchandize of the honest and good citizens,

&c., and with intent to cheat and defraud one Boardman Poor, the prosecutor, did unlawfully, knowingly and designedly, falsely pretend, that a certain paper therein described and set out *in hæc verba*, (describing a five dollar bill of the Franklin Bank) was a good negotiable promissory note and bank bill, and security for the payment of five dollars. The indictment then alleges, that said Poor, believing said false representation, and being deceived thereby, took the said bill as and for a good negotiable promissory note and bank bill, and security for five dollars, and delivered to the prisoner a bushel of apples, of the value of fifty cents, and good bills and coins, to the amount of $ 4·50, in exchange. In. charging the falsity of this pretence, the indictment then alleges, that in truth and in fact, the said paper writing was not a good negotiable promissory note and bank bill, and security for the payment of $ 5 therein mentioned, and that the prisoner knew that it was not a good negotiable promissory note and bank bill, and was not security for said sum of $ 5 ; and with such knowledge, and with such intent to cheat said Poor, did pass it &c. by means whereof &c.

The defendant was found guilty, and having filed a bill of exceptions, it was allowed, and the cause has been now argued upon various points.

It appears by the evidence offered at the trial, and set forth in the bill of exceptions, that the prosecutor, Boardman Poor of Charlestown, brought a load of apples to the city for sale, and met the prisoner in the street, who bought a bushel of apples of him, at fifty cents, and passed to him a $ 5 bill of the Franklin Bank, which he took, believing it to be a good current bill of some bank, and gave the prisoner the change in good money. Nothing was said about the bill. The prisoner offered it as a good bill, and Poor received it as such. The prisoner directed him to carry the apples to a particular house described, which he did, but found that no such person lived there ; nor would any person there receive them. He then suspected that the bill was bad, and upon inquiry found that it was the bill of a broken bank, whose bills had ceased to pass and were of no value. He then went to look for the person who passed it to

him, and found him. On cross examination, he stated that he had never tried to ascertain who were the stockholders of the Franklin Bank. Various evidence was offered tending to show the guilty knowledge and fraudulent intent, with which the bill was passed ; but as no question is open upon the weight of evidence, it is unnecessary to state it in detail, further than to show the relevancy of the exceptions.

1. At the trial, the defendant's counsel requested the court to charge the jury, that it was the duty of the government to prove that the bill was worthless, by evidence that none of the stockholders were solvent, or, if solvent, had paid to the amount of their stock. But the judge ruled that such evidence was not necessary ; to which the prisoner excepted.

On the ground upon which the trial proceeded, we think this exception is untenable. It goes on the assumption, that upon an indictment for obtaining money by false pretences, by passing, as money, a worthless note, or note of little value, it is necessary to prove that the note was not a valid contract. We think this is not a correct view. The gist of the offence is, not that the note did not constitute a valid contract, binding, to some extent, upon some person, but that from the failure of the bank that issued it, and the entire prostration of its credit, its bills had become practically worthless as a medium of exchange, and ceased to be current as bank bills. We think, therefore, that the judge was right in deciding, that upon such a trial it was not necessary to show that the note did not afford any possible legal cause of action against any person liable, but that the charge would be sustained by showing, by the testimony of practical men, that such bills are of little or no market value, and had wholly ceased to be received as current bills, as a conventional substitute for money, upon ordinary sales and payments.

2. The second point was, that evidence of the market value of a failed bank is not sufficient to show that the bill is not worth its face. The judge ruled that the whole evidence was to be weighed by the jury, to determine whether the bill was worth its face, and if it made out a *primâ facie* case, the jury might so find, unless met by the defendant's evidence.

The court are of opinion, that this evidence of market value was competent. Showing that the bills had little or no market value, taken in connexion with the fact that the bank had ceased paying its bills, and that they were no longer passable as current bills, was competent evidence of the prisoner's fraudulent intent. The fact that a bill is not worth its face would, of itself, go little way in proving a fraudulent intent ; because bank bills, although at some discount, and therefore not worth the full amount in specie, do nevertheless pass currently as money ; and in such a state of things, no man would be held to represent that a current bill, thus usually and commonly passed as money, was worth the full amount expressed, in specie. The implied representation in such case is, that as far as he knows, it is a genuine bill of the bank from which it purports to have issued, and is received and passed as money. There is no deception, though the bill is at a discount for specie ; because such rate of discount is or may be ascertained and understood as well by the one party as the other.

3. The judge was further requested to charge the jury, that those persons, who take the bills of broken banks, are bound to look out for themselves, and take such bills at their own risk. This exception assumes that both parties know that the note is the note of a broken bank ; whereas the gravamen of the complaint, and the material fact to be proved is, that the party passing it, knowing it to be the bill of a broken bank, passes it, as the bill of a sound bank, to one who does not know it to be the bill of a broken bank.

4. The fourth exception was, that the passing of such a bill and receiving change for it was not a sufficient representation that the bill was a good one. Upon this point the judge ruled that this was a question of fact for the jury, upon all the evidence and the attendant circumstances of the case. This direction, we think, was correct. The modes in which a pretence or representation may be made, so as to induce belief in the mind of another, may be greatly diversified. It was very properly admitted in the argument, that such representation need not be by words. It may result from signs and tokens, from false personation, or from the relation in which a person stands.

It was strongly pressed on the consideration of the court, that if the mere passing of a bad bill, be it a counterfeit or the bill of a broken bank, amounts to a representation of its goodness, many an innocent man may be convicted of this offence. But we think this danger would not follow. It is to be considered as a representation of nothing more than that, as far as he knows, it is good, without resorting to any art or contrivance to induce a belief in another, of what he knows or believes to be false. The guilty knowledge, and the intent to deceive and defraud, are substantive facts to be proved. If they are not proved, the defendant cannot be convicted ; if they are proved, he cannot be innocent.

5. The fifth exception was to the admission of proof of the possession and passing of other similar bills, as evidence of the *scienter.*

This is an exception to the general rule of evidence. But it must be considered that it is to prove a fact not proveable by direct evidence ; that is, a guilty knowledge and purpose of mind, which can rarely be proved by admissions or declarations, and can in general be proved only by external acts and conduct. The case is strictly analogous to the rule in relation to proof of *scienter* on a charge of passing counterfeit bills or coins, which is well established here and in England. 2 Russell on Crimes, (4th Amer. ed.) 384, 697, and *notes. Harrison's case,* 2 Lewin's Crown Cases, 118.

6. Lastly, the defendant's counsel requested the judge to charge, that as bills had been at times commonly and daily passed, which are of a slightly depreciated value, and it being impossible to draw the line, at any particular per-centage, which shall constitute a fraud, and which shall not, the jury should not be at liberty to consider it a fraud to pass a bill which is of any value. The judge declined giving this instruction, and for reasons which appear to us entirely satisfactory. The rate of percentage, at which a bill may be valued, for special purposes, by brokers or others, has very little concern with the question of fraud. A current bill may be very innocently passed, which is at a considerable discount. Such has been the currency of a

considerable part of the United States, for a long period. It is the guilty knowledge, design and purpose of the one party, practising upon the ignorance of the other, and thus effecting an actual deception and fraud, which constitutes the offence. It was held in a recent case, that passing a forged due-bill as true, and obtaining money and goods for it, would support an indictment for obtaining money by false pretences, although the note, if genuine, would have been void by act of parliament, and therefore not a legal security. *Rex* v. *Freeth*, Russ. & Ry. 127.

Still, the general question recurs, whether although the evidence, set forth in the bill of exceptions, would be sufficient to support an indictment for obtaining money by false pretences, it is sufficient to support this indictment, as it is framed. The case, to which the evidence applies, is that of passing the worthless bill of a bank which had failed and ceased to pay its bills, and whose bills had ceased to be current, as the bill of a bank, whose bills were received as current in actual sales and payments. But in recurring to the indictment, the court are of opinion that it does not state such a case. The charge in the indictment is, that the defendant represented it to be a good negotiable promissory note, and bank bill and security for the payment of five dollars therein named, but that it was not a good negotiable note, &c. — using exactly the same terms. This description is closely followed through the whole indictment. Taking the words in their usual and ordinary meaning, we think the indictment describes, not the genuine note of a worthless bank, but a note, not the genuine note of any bank ; that is, either a counterfeit note of some real bank, or a paper bearing the semblance of a bank note, but purporting to be of some bank having no real existence. It was certainly a negotiable promissory note and bank bill ; and the term " good," rather imports " genuine," than as expressive of its being available to ensure payment. And so the word " security " rather designates legal obligation and liability, than a practical assurance that the bill will be paid. Taking this to be the true meaning and just interpretation of these words, then the purport of the averment is,

that the note in question was not the genuine obligation and promissory note of any actual bank, and did not constitute a binding contract to pay five dollars. But such is not the character of the note given in evidence. The case made by the evidence is, that it was the genuine, negotiable promissory note of an actual bank, duly issued, and did constitute a legal and binding contract to pay five dollars. Had the evidence shown that it was a simulated bank bill, not issued by any bank having a real existence, it might have supported this indictment, on proof of the false and fraudulent representation. But as it is, the court are of opinion that this indictment cannot be supported by evidence showing that it was the genuine bill of a real bank, duly issued, although by the utter failure of the bank and the entire prostration of its credit, the bill had become worthless, and ceased to be current ; and therefore that the verdict must be set aside and a new trial granted : And the case is remitted to the municipal court, for further proceedings.

*Park*, for the defendant.

*Austin*, (Attorney General,) for the Commonwealth.