## HANLEY ET AL. v. MASON ET AL.

[No. 6,116.   Filed July 1, 1908.   Petition for a rehearing dismissed
October 8, 1908.]

1.  MORTGAGES.—*Bills to Redeem.*—*Equity.*—Where a complaint is
    filed alleging that plaintiffs are the owners in fee simple of cer-
    tain lands, that a mortgage thereon was executed by their
    ancestor, that such mortgage was foreclosed without making
    them parties, that a decree of sale was entered, the land sold
    thereunder, the defendants being the purchasers, such complaint
    further asking for an accounting, and offering to pay the amount
    due, and praying for permission to redeem from such mortgage,
    such proceeding constitutes an equitable suit to redeem.   p. 319.
2.  TRIAL.—*Theory.*—Parties will be bound by a suit according to
    the theory of the pleadings adopted upon the trial, where no objec-
    tions were taken thereto, and where such theory was carried into
    the decree.   p. 319.
3.  JUDGMENT.—*Final.*—*Redemption.*—*Mortgages.*—A decree in a
    suit to redeem and for partition setting out that the plaintiffs shall·
    have one year in which to redeem, that if redemption be not then
    made they shall take nothing and shall pay the costs, that the
    land is indivisible and that it be sold and the costs paid accord-
    ing to interest, is final, and the parties are bound thereby.   p. 319.
4.  TRIAL.—*Finding.*—*Judgment.*—*Redemption.*—A statement in a
    decree in a suit to redeem, that plaintiffs shall redeem by paying
    to the defendants within one year the amount stipulated, and
    that upon failure to do so they take nothing and the suit to be
    dismissed at their costs, is not a mere finding, but is a binding
    order of the court.   p. 320.
5.  PARTITION. — *Redemption.* — *Commissioners.* — *Reports.*—*Accept-
    ance.*—*Effect.*—Where, in a suit to redeem and for partition, a
    commissioner is appointed, the decree providing that plaintiffs
    shall have one year in which to redeem, in default of which they
    shall take nothing and their suit shall be dismissed at their
    costs, and the commissioner fails within the year to sell such
    lands, and reports such fact and asks to be discharged if plain-
    tiffs' title had failed because of their failure to redeem, and the
    court thereupon approves such report, discharges such commis-
    sioner, and strikes the cause from the docket, such order is bind-
    ing upon the plaintiffs.   p. 321.
6.  ESTOPPEL.—*Conduct.*—*Trial.*—*Judgment.*—Parties to a suit are
    estopped from questioning the theory thereof adopted by the trial
    court, or the decree entered therein, where they made no objec-

tions thereto and for a long period of time acquiesced therein. pp. 321, 324.

7. JUDGMENT.—*Ambiguous.—Meaning.—How Ascertained.*—Where a decree is ambiguous, the court in determining its scope and meaning may examine the pleadings and other proceedings in the cause.   p. 321.

8. MORTGAGES. — *Redemption.—Decree.—Collateral Attack.*—While a strict foreclosure of a mortgage cannot be had as against the legal owners of land, if the legal owners file a suit to redeem and the decree gives them one year in which to do so, failing therein they were to take nothing and their suit to be dismissed at their costs, they are bound thereby, especially on a collateral attack in a suit wherein they seek to quiet their title.   p. 322.

9. JUDGMENT.—*Collateral Attack.*—A judgment, however erroneous, cannot be collaterally attacked, where the court had jurisdiction of the parties and subject-matter.   p. 322.

10. MORTGAGES.—*Suits to Redeem.—Decree.*—Where plaintiffs sue to redeem from the lien of a mortgage, and the court finds in their favor giving one year in which to pay such lien, and providing that in case of failure they take nothing by their suit and pay the costs, their failure to comply with such decree completely bars their future assertion of title.   p. 323.

11. APPEAL.—*Petition for a Rehearing.—Notice.*—Notice to the adverse party is not necessary in the filing of a petition for a rehearing.   p. 325.

12. SAME.—*Petition for a Rehearing.—Requisites.*—A petition for a rehearing must specifically point out the alleged errors in the court's decision.   p. 325.

13. SAME.—*Petition for a Rehearing.—Briefs.*—A petition for a rehearing, unsupported by argument, presents no question, and will be dismissed.   p. 326.

From Wells Circuit Court; *Charles W. Watkins*, Special Judge.

Suit by George B. Mason and others against Mary Hanley and others. From a decree for plaintiffs, defendants appeal. (For decision on petition to dismiss see 40 Ind. App. 180.) *Affirmed.*

*Hamilton & Brown, Abram Simmons* and *Frank C. Dailey*, for appellants.

*Heaton & Yaple,* for appellees.

HADLEY, J.—Appellees filed a complaint in the usual form against appellants to quiet title to certain real estate in Wells

county. Appellants filed an answer in general denial; cause tried, and decree entered in favor of appellees, quieting their title to said land. Appellants moved for a new trial, which motion was overruled. This ruling is assigned as error.

It appears from the evidence that on March 11, 1869, Rachel Higgs became the owner of the real estate in controversy, and continued the owner thereof until June 18, 1869, on which date she, with her husband, conveyed said land to George W. Keeler, and on August 12, 1869, said Keeler conveyed said land to Michael Hanley, the ancestor of appellants, which deed was duly recorded. On April 19, 1869, said Rachel Higgs and husband mortgaged said land to Sophia Bartley. In 1871 said Sophia Bartley and husband brought suit against said Rachel Higgs and husband for foreclosure of said mortgage, but making no other persons parties thereto. Judgment of foreclosure was entered, the land sold under the decree, and purchased by John S. Bartley, husband of said Sophia. A sheriff's deed was executed and delivered to said Bartley, conveying said lands to him under said decree. Bartley thereupon entered into possession of said land. Bartley afterwards conveyed the land to John C. Crandall and wife. Crandall reconveyed the lands to Bartley, and the Bartleys afterwards conveyed the lands to Josephus Mason, ancestor of appellees.

In September, 1882, appellants brought suit against said John S. Bartley and Sophia Bartley, Mary E. Lovall, John Hanley, Rebecca Branstrater and others, averring that appellants and Mary E. Lovall, John Hanley and Rebecca Branstrater were the heirs of Michael Hanley, deceased.

The complaint was in two paragraphs; the first being in the usual form of a suit to quiet title, and the second averring the purchase of said real estate by said Keeler and the sale of the same, on August 12, 1869, by him to said Michael Hanley, subject to the Higgs mortgage to Bartley, and also subject to another mortgage to one Neeley; that said deed to

Hanley was properly recorded on October 11, 1869. The paragraph then recited the foreclosure of said mortgage by said Bartleys and the sale of the land on the decree thereunder to said John S. Bartley, and the issuance of a sheriff's deed to said Bartley, as before set out; that said Hanley was not in possession of said land at the time of said sheriff's sale, and that upon said purchase said Bartleys entered into the possession of said lands and continued in the possession thereof until the filing of said suit, a period of ten years.

The complaint then averred that plaintiffs and defendants Mary E. Lovall, John Hanley and Rebecca Branstrater were the owners of said real estate, setting out the interests of each; that the Bartleys had possession for said period of ten years, received the rents and profits for said time, and. also received money from the sale of timber. It also averred the execution of the Neeley mortgage, setting out the amount of the same and its recording. It averred the present possession of the land to be in one Springer, holding under said Bartleys; that said land was not susceptible of division. Prayer that an accounting be had with said defendants, and offering to pay said defendants any amount found by the court to be due them; that said mortgage be declared paid and satisfied and so entered of record; that their title to said property be forever quieted, and for all further proper relief; that said premises be partitioned or declared indivisible and a commissioner appointed to sell the same and pay said liens, and distribute the proceeds in accordance therewith.

To this complaint defendant John S. Bartley appeared and filed an answer to the second paragraph in five paragraphs, the first of which averred his purchase of the lands at said sheriff's sale on the Higgs mortgage for the sum of $500, his receipt of the sheriff's deed, his possession of said lands from August 15, 1872, until the commencement of said suit; that, while he had received small amounts of

rents and profits arising from said possession and occupation, he had expended a much larger sum in necessary repairs upon said premises; that he had not cut down or removed any timber, except when necessary to make repairs, and that he had paid taxes, amounting to $200, on said real estate. Said paragraph asked that plaintiffs be ordered to pay him the amount of his mortgage, together with the money so expended in improving said land and for taxes, before said plaintiffs should be permitted to redeem and take possession of said real estate, and for all other proper relief. The second averred an indebtedness to defendant Bartley from plaintiffs for the value of permanent improvements, and asked that said indebtedness be paid before plaintiffs be permitted to redeem and take possession of said premises. The third averred that when said defendant purchased said land at said sale and entered into possession it was untillable and abounded in swamps and bogs, and had no rental value; that said defendant completed a series of improvements, in the way of ditching and clearing said lands and building houses and fences thereon; that whatever rents had been received had been received by virtue of his said labor and expense, and that he should not therefore be charged with the rents and profits. The fourth averred the improvements of said real estate in detail; that the same were made in good faith, and in the belief that he was the owner, and that he be allowed the cost of said improvements over the rents received. The fifth averred said improvements in detail; that they were made in good faith, in the belief that he had the absolute title to said real estate; that he held possession of the same for ten years, with the knowledge of plaintiffs of said possession and said improvements, and their acquiescence therein.

Sophia Bartley also filed answer to said second paragraph of complaint, in which she set up the foreclosure and sale of said lands under the Higgs mortgage, and set out the notes

secured by said mortgage. She averred that said notes were due and unpaid except by said sale of said land; that there was due on said notes to said defendant the sum of $500, and demanded that plaintiffs be ordered to pay said sum to said defendant before they should be permitted to redeem said premises, and for all other proper relief.

Defendant Mary E. Lovall filed a cross-complaint setting up her interest in said land, as widow of said Michael Hanley, alleging that she owned one-third interest in said land, reciting the Higgs mortgage to Bartleys, the foreclosure of the same, and the purchase and possession by the Bartleys thereunder, their receipt of the rents and profits, and asking that an accounting be had, with a view to finding what was due said Bartleys, if anything, and enabling her to pay whatever sum so found and redeem said land from said sale, which she thereby offered to do. Prayer for an accounting and permission to redeem from said sale.

To this cross-complaint all the plaintiffs answered by general denial. Afterwards the cause was tried, and on December 1, 1882, a general finding was made and decree entered, by which it was determined that the plaintiffs and defendants Mary E. Lovall, John Hanley and Rebecca Branstrater were the owners of said real estate; that there was due to the defendants, John S. Bartley and Sophia Bartley, on their mortgage, the sum of $485.60; that there was due on the Neeley mortgage the sum of $410.32; that said sum of $485.60, due Bartleys on their mortgage, was a prior lien and should be paid first; that each of the plaintiffs, as well as said defendant Mary E. Lovall, was entitled to redeem said real estate and hold it free from encumbrance as to the defendants John S. Bartley and Sophia Bartley on payment to them of their said claim of $485.60, with interest thereon at the rate of six per cent per annum from date, within one year from said date, and that, on failure so to pay, they take nothing in the premises by their complaint in this behalf. The court also determined that the

land could not be divided without injury, and ordered that the same be sold subject to the Neeley mortgage, and Joseph S. Dailey was appointed commissioner to make such sale, and ordered to pay said claim of said Bartleys out of the first money coming into his hands from the sale of said premises. It was also ordered by the court that the parties pay the costs according to their several interests in said real estate. Said commissioner filed his bond, as provided in said order.

Afterwards, in December, 1886, plaintiffs and said defendants in said cause having failed to redeem in accordance with said decree, said Dailey presented his petition to the court in said cause, wherein he set out the order before described, and reported that he had advertised and made effort to sell the land within the year after the date of the entering of said decree, but was unable to make a sale thereof, and he asked for instructions from the court as to whether the expiration of the year for redemption as fixed in said order, without such redemption, had not divested the interest of the plaintiffs and defendants in said real estate and the right of the commissioner to sell said tract; and if, in the opinion of the court, the power of such commissioner to sell no longer existed, that he be discharged from any further duties pertaining to said trust. Upon this petition, the court made an order approving the report, and discharging him from further services and liability, and ordering the cause stricken from the docket. During the pendency of said suit and continuously thereafter said Bartleys and their privies continued in the uninterrupted, exclusive, and actual possession of said land until the first week in August, 1903, after this suit was instituted, when appellants entered upon said land and asserted possession.

It is urged by the appellants that the foregoing facts are not sufficient to support a decree in favor of appellees; that while the appellees and their grantors were in the actual, continuous and exclusive possession for nearly thirty years,

the continuity of the adverse possession and claim of right was broken by the proceedings in 1882, wherein appellees' grantors admitted the title of appellants to the land, and hence appellees at no time have been in continuous, adverse possession under a claim of right for a period of twenty years.

Appellees present two propositions: (1) That the proceedings in 1882 did not break the continuity of their possession; (2) that said proceedings were in the nature of an action to redeem and the decree of the court was in the nature of a strict foreclosure. In our view of the case, it is unnecessary to consider the first proposition. It seems clear that the case in 1882 was treated by all parties as an equitable suit by appellees to redeem. It is true, there was a paragraph in the usual form to quiet title; but no answer to it was filed, no issue joined thereon, and no mention made of it or of any issue that might have been tendered thereby in the finding and decree of the court. But the sole issue presented, considered and determined was upon the second paragraph of complaint and first paragraph of cross-complaint of Mary E. Lovall, each of which contains the substantial averments of a bill in equity to redeem. 2 Jones, Mortgages (6th ed.), §1106.

At least the trial court so regarded it and so treated and considered it; and as appellants made no objections to it, they are bound to such theory. *Hannah y. Davis* (1892), 112 Mo. 599. See *Zeller, McClellan & Co.* v. *Vinardi* (1908), *ante,* 232, and cases therein cited.

The finding and decree of the court clearly show that such was the adopted and accepted theory of the case. Appellants contend that this adjudication amounts only to a decree that the lands be sold, the proceeds divided and the costs paid; that the provision that appellants 'redeem within one year or take nothing by their suit, is only a finding and not a final decree. We cannot so

construe the decree. The decree was intended as a final determination on all the issues presented. There was a specific order for the sale, the distribution of the proceeds, and the payment of the costs. Looking to the issues presented and the decree as entered, a fair construction of

4. the latter would be that that portion of it which declares that appellants shall redeem by paying to the Bartleys within one year the amount therein stipulated, or take nothing by their suit, is an order of the court, and not a mere finding. While it is connected with the finding that appellees are entitled to redeem by paying the amount found due, the clause referred to is not properly a finding, nor does its language import such a meaning. It is substantially the formal language of a decree authorizing and fixing the time for redemption in an equitable proceeding for that purpose.

In 2 Jones, Mortgages (6th ed.), §1106, the learned author says: "The form of the judgment ordinarily is, that the plaintiff may redeem upon paying the amount found due on the mortgage within a specified time, together with the costs; and that upon his doing so the defendant shall discharge the mortgage and deliver up the mortgaged premises; and that upon default of such payment the complaint be dismissed with costs." This statement is fully supported by the authorities. In the decree under consideration the court's language is: "That each of the plaintiffs, as well as the defendant Mary E. Lovall, is entitled to redeem said real estate and hold the same free from encumbrance as to the defendants John S. Bartley and Sophia Bartley on payment to them of their said claim of $485.60, with interest thereon at the rate of six per cent per annum from date within one year from this date; that, on failure so to pay, they take nothing in the premises by their complaint in this behalf." The analogy is obvious.

That the court intended and the parties thereto understood said decree to have the meaning, force and effect we

have here given is evidenced by the further fact that Joseph S. Dailey, attorney for Mary E. Lovall in said cause, was, by said decree, appointed commissioner to sell said land, and thereafter in December, 1886, he made report to the court that as such commissioner he had, pursuant to said decree, endeavored to sell said land, within the year after the entering of the decree, by twice advertising it, but had been unable to find a purchaser, and he concluded his report as follows: "And he now asks for instructions from this court as to whether the lapse of time has not divested the interests of the plaintiffs and defendants in said real estate, and the rights of your commissioner now to sell said tract, and if, in the opinion of this court, the power of your commissioner to sell no longer exists, that he be discharged from any further duties pertaining to said trust." Upon the presentation of this report the court made an order approving the same, and ordered that "said commissioner is discharged from further service and liability herein, and this cause is ordered stricken from the docket."

The record discloses no objection by appellants, who were plaintiffs in said cause, either to the issues made up, the theory adopted by the defendant Mary E. Lovall or by the court on the trial, or to the form or substance of the decree as entered, or to the construction afterward given thereto by the court on the commissioner's report, and it appears that they all accepted the same and acquiesced therein.

Where the force and effect of a judgment is called in question and the same is ambiguous, we may look to the pleadings and other proceedings to ascertain its true meaning. In Black, Judgments (2d ed.), §123, the author quotes with approval the following from *Clay* v. *Hildebrand Bros.* (1886), 34 Kan. 694: "Wherever the entry of a judgment is so obscure as not clearly to express the exact determination of the court, reference may be had

to the pleadings and the other proceedings; and if, with the light thus thrown upon such entry, its obscurity is dispelled and its intended signification made apparent, the judgment will be upheld and carried into effect in the same manner as though its meaning and intent were made clear and manifest by its own terms."

The decree was in the nature of a strict foreclosure of the rights of plaintiffs and defendant Mary E. Lovall. But appellants insist that under our practice a strict foreclosure cannot be had as against the holder of the legal title, and cite *Jackson* v. *Weaver* (1898), 138 Ind. 539, and *Jefferson* v. *Coleman* (1887), 110 Ind. 515, which fully support this contention. If the decree were before us as the subject of a direct attack, the invocation of the rule would be pertinent. But the question is not thus presented. In the case under consideration plaintiffs and defendant Mary E. Lovall asked the court to be permitted to redeem, or at least consented that the court should so treat their complaint. By so doing they abandoned their statutory rights, and sought protection and relief through the general principles of equity. The judge granted the relief asked in accordance with the principles under which it was sought. He gave them one year to redeem, the statutory time for redemption from a sale, and provided that, in case of default, they should take nothing by their suit, and made final adjudication as to costs and the cause. To this decree appellants acquiesced without objection.

The decree was entered by a court having jurisdiction of the parties and the subject-matter, and, however erroneous it may have been, it cannot be collaterally impeached by one who was a party to it. In *Eiceman* v. *Finch* (1881), 79 Ind. 511, the court say: "Whether the decree barring appellant's general equity of redemption was right or wrong, cannot be here made the subject of investigation. The familiar rule, that a party cannot collaterally

impeach a judgment, precludes all inquiry into the validity of the decree rendered in the foreclosure suit, to which appellant was a party.'' If the appellants were dissatisfied with their decree they might have appealed or filed a bill of review. They did neither, and now, after waiting over twenty years, they seek to impeach their own decree in a collateral way. This cannot be done. *Kolle* v. *Clausheide* (1884), 99 Ind. 97.

Upon the default of appellants, the effect of the decree under discussion was to bar and foreclose their interest in said land. 2 Jones, Mortgages (6th ed.) §§1107, 1108; *Dennett* v. *Codman* (1897), 168 Mass. 428; *Sherwood* v. *Hooker* (1846), 1 Barb. Ch. 650; *Cowing* v. *Rogers* (1868), 34 Cal. 648; *Perine* v. *Dunn* (1819), 4 Johns. Ch. *140; *Kolle* v. *Clausheide, supra.*

In the case last cited the court say: ''It is not unusual to authorize redemption within a given time, where the statutory right is not asserted, and ordinarily, in such cases, if the redemption be not made within the time fixed, the right to redeem is lost.''

In *Perine* v. *Dunn, supra,* Kent, chancellor, says: ''I take it for granted, that the time to be allowed by the decree to pay the mortgage debt, whether on a bill to redeem, or upon a bill to foreclose, is not absolutely certain, but rests in discretion, and will be regulated by the circumstances of the particular case. In the precedents in the Equity Draftsman, the time is left blank. But I am inclined to think that six months is the usual time under the English practice on bills to redeem; and there is the more reason for the allowance of such a liberal time, considering that the time will not afterwards be enlarged, and that a failure of payment by the time would, probably, be equivalent to a forfeiture of the equity of redemption. * * * The usual decree, in these cases of bills to redeem, where the party fails to redeem, or is not entitled to redeem, is, that the bill be dismissed.

* * * Such a dismissal, I apprehend, amounts to a bar of the equity of redemption, because it might be pleaded in bar of a new bill to redeem. A bill regularly dismissed upon the merits, where the matter has been passed upon, and there is no direction that the dismission be without prejudice, may be pleaded in bar of a new bill for the same matter. * * * There may, indeed, questions arise on this subject, as, whether the decree of dismissal has been duly enrolled, or duly and finally rendered, or whether it amounts to a *res judicata* upon the substance of the bill; but assuming these points of form and criticism to be all properly settled, it would seem to be within the reason of the rule, that a decree dismissing a bill seeking to redeem, because the plaintiff would not redeem when allowed and directed should conclude the party from a new bill to redeem. Why should he be allowed to vex the· mortgagee again with a faithless proposition?'' The judgment for costs takes the place of a decree of dismissal and works a foreclosure, such decree being equivalent to a decree of foreclosure, and has the same effect, although it does not expressly declare it. 2 Jones, Mortgages (6th ed.), §1108. The foregoing authorities enunciate the general equitable rules of redemption. Applying them to the case under consideration, the decree, the default of appellants, the subsequent order of court striking said cause from the docket. to all of which appellants were parties, and to which they made no objection, but accepted and abided by, operated effectually to foreclose all the rights of appellants to said land.

Appellants clearly show by their conduct that they so understood the effect of the proceedings. They abided by the judgment for twenty years, although knowing that innocent parties were acquiring rights upon the faith of their acquiescence, and they cannot now, after such a lapse of time be permitted to come in and assert rights that were, on the face of the record, adjudicated

and settled in a proper forum and under equitable rules of their own choosing.

The judgment is affirmed.

Roby, J., absent.

## ON PETITION FOR REHEARING.

HADLEY, J.—Appellants have filed a petition for rehearing in this cause, setting out thirty-two specifications of error in the opinion, each of which simply states that the court erred in its decision in regard to the specified matter. There is no brief or statement of any kind filed with said petition showing in what respect the court erred in any of the particulars averred.

Appellees have filed a motion to dismiss said petition, upon the grounds (1) that no notice was given of its pendency, and (2) that it presents no question for consideration by this court. The first contention of appellees is untenable. The cause being pending until after the expiration of sixty days from the filing of the opinion of the court, within which time the losing party has the statutory right to file his petition for rehearing, and no notice of such filing is necessary.

It has been decided frequently that a petition for rehearing must point out wherein the court erred in the result reached upon the original hearing, and general statements or assertions that the decision is erroneous will not suffice. *Reed* v. *Kalfsbeck* (1897), 147 Ind. 148; *Finley* v. *Cathcart* (1898), 149 Ind. 470, 63 Am. St. 292; *Baltimore, etc., R. Co.* v. *Conoyer* (1898), 149 Ind. 524; *Louisville, etc., R. Co.* v. *Carmon* (1898), 20 Ind. App. 471; *Goodwin* v. *Goodwin* (1874), 48 Ind. 584.

In the case last cited the court say: "The office of a petition for a rehearing is not to request the court generally to reëxamine all the questions in the record, or all the questions decided against the party filing it; but it is to point out

particularly the errors which the court is supposed to have committed in the decision which it has made.'' It is held in *City of Bedford* v. *Neal* (1896), 143 Ind. 425, that a specification of error in a petition for rehearing, not supported by any argument or authority, is regarded as waived or abandoned, the court saying on page 432: ''The last ground is not supported by any argument or authority cited in the brief. It must, therefore, be regarded as waived or abandoned.''

Since no reason, argument or authority is given by appellant in support of any of its specifications in the petition for rehearing, such petition presents absolutely no question for the consideration of this court. A petition that presents no question is in reality no petition, and the motion to dismiss should be sustained.

The petition for a rehearing is dismissed.