STATE EX REL. BOOTH ET AL. *v*. BECK JEWELRY
ENTERPRISES, INC.

[No. 27,579. Filed May 14, 1942. Rehearing denied June 8, 1942.]

*George N. Beamer,* Attorney General, *Francis H. Hamilton, John R. Walsh,* and *Joseph W. Hutchison,* Deputy Attorneys General, *Wilbur F. Pell* and *Wilbur F. Pell, Jr.,* both of Shelbyville, and *Wendell O. Harris,* of Fort Wayne, for appellants.

*Hoffman & Hoffman* and *Colerick & Corbett,* all of Fort Wayne, for appellees.

RICHMAN, J.—Appellant in its complaint for a permanent injunction charged that certain conduct of appellees constituted the practice of optometry within the meaning of chapter 38 of the Acts of 1935 requiring licenses which appellees did not possess. The judgment followed the prayer of the complaint that appellees "be and they hereby are permanently enjoined from practicing or engaging in the practice of optometry in the State of Indiana without the license required by law." Without filing motion to modify the judgment appellant appealed. After the case had been fully briefed on the merits at the time of oral argument appellees asked and later were granted permission to amend their briefs so as to present their contention that the judgment gave appellant all the relief it asked and hence it had no right to appeal.

There were seven special findings of fact and three conclusions of law. Conclusion 2 is "that the selling, trading and bartering of eye-glasses and spectacles, as set out in Finding No. 5, does not constitute the practice of optometry as defined by the statute of the State of Indiana." From this conclusion it is apparent that the practices set out in Finding 5 were not by the trial court intended to be enjoined because they were outside of his definition of the practice of optometry. We may look to the whole record to ascertain the meaning or effect of the judgment. *Fleenor* v. *Driskill* (1884), 97 Ind. 27, 33. See also *Hanley* v. *Mason* (1908), 42 Ind. App. 312, 85 N. E. 732. One of the two controversial questions below and in this appeal is whether such sales without a license are forbidden by the statute which appellant is administering. The trial court said they were not and the substantial effect of his judgment was to deny to appellant the relief to which it is entitled if his definition is erroneous. We shall therefore consider the questions presented and argued.

To the complaint which was filed September 6, 1938, appellees filed answer admitting practices in violation of the statute up to the twenty-sixth day of November, 1938, but asserted that since that date their practices have been within the law. The first part of Finding 5 is as follows:

"That on the 26th day of November, 1938, the said defendants ceased the practice of optometry as set forth in Finding No. 4, but since said time have engaged in the business of selling, bartering and trading eye-glasses and spectacles in the various cities and places set out in the plaintiff's complaint herein and in the foregoing Finding No. 2; that in the carrying on of said business the said defendants have maintained places of business and establishments for said purpose, in which they displayed

cases containing eye-glasses and spectacles of various types, styles, and lenses, and acting either through themselves or through their agents and salesmen have exhibited said eye-glasses and spectacles to prospective customers and assisted said customers to try them on and make tests as to their adaptability by reading magazines or signs which were available, and have at times assisted in adjusting the frames of glasses and spectacles to the faces of said prospective purchasers:"

The remainder of this finding may be disregarded as a conclusion of law. It was admitted in oral argument that the two lenses of every set of glasses sold by appellees are alike. Appellant also contends that the uncontradicted evidence adds the further facts that the customer and the salesman sit at opposite sides of a table, that the salesman hands the glasses to the customer who is requested to read available magazines and signs on nearby buildings, that if he does not see well with the glasses another set is handed by the salesman to the customer and the process is repeated until a pair is found with which the customer is satisfied. For the purpose of this case we shall treat all these facts as if properly found. If such practices are not within the definition of section 4 of the statute then so far as the sales of the glasses is concerned, the decision below was correct. The section reads:

"The practice of optometry is hereby defined to be any one of the following acts, or any combination of, or part of the following acts:

"(a) The examination or diagnosis of the human eye, to ascertain the presence of abnormal conditions or functions which may be diagnosed, corrected, remedied or relieved, or the application or prescription of lenses, prisms, exercises, or any physical, mechanical, physiological or psychological therapy, or the employment of any means, for the purpose of detecting any diseased or pathological condition of the eye, or the effect of any disease

or pathalogical condition of the eye which may have any significance in a complete optometric diagnosis of the eye or its associated structures.

"(b) The application, use, or adaption of physical, anatomical, physiological, psychological or any other principles through scientific professional methods and devices, to the examination of the eyes and vision, measuring their function for the purpose of determining the nature and degree of their departure from the normal, if any, *and* adopting optical, physiological and psychological measures and/or the furnishing or providing any prosthetic or therapeutic devices for the emendation thereof." Acts 1935, C. 38, § 4 (§ 63-1004, Burns' 1933 [Supp.], § 13174, Baldwin's Supp. 1935).

Subsection (a) has two separable parts: the first twenty-five words (ending with "relieved") pertain to the examination of the eye without designating the character of the examination. The remainder of (a) likewise pertains to the examination of the eye but designates various means, all, however, for the purpose of detecting a pathological condition or its effect. There is no suggestion in (a) of any remedial action. There is no mention of vision. It is the eye which is the subject of examination.

The first part of (b) (ending with words "if any") likewise pertains to the examination of the eye but also includes vision—"eyes and vision." But this examination is "through scientific professional methods," and not otherwise. The purpose of the examination is to determine "the nature and degree of their departure from the normal."

The latter part of (b) is the only portion of the definition which purports to cover any remedial action and is chiefly relied upon by appellant. The argument is that "furnishing . . . prosthetic . . . devices" means furnishing eyeglasses, "for the emendation thereof" means to correct, and "thereof" refers to "eyes and

vision;" so that the whole clause means furnishing eye-glasses to correct eyes and vision. We can accept this view. Appellant thinks this is enough to make its case. But we cannot agree.

The italicized conjunctive "and" joins the two parts of (b) so that read as a whole it pertains to the "scientific professional examination of the eyes and vision *and* the furnishing of remedies, including lenses, for the correction of their abnormal conditions." We realize that courts sometimes substitute the disjunctive for the conjunctive where the context requires but here we see no reason for such substitution. It seems to us that the Legislature was careful with its "ands" and "ors" in this whole subsection. Later the symbol "and/or" is used which does not add certainty but does permit a choice between the conjunctions. If any such choice had been intended where the italicized "and" appears we should expect to find the same symbol. We think the two parts were intended to be read together. Since there is no pretense that appellee's sales are made in connection with scientific or professional examination either of the eyes or vision the definition does not fit the facts.

We cannot find in the opening words of the section justification for severing words and phrases from their context or rearranging them to procure a definition which, in the language of the trial judge, might have been stated, if intended, "in plain English language." Nowhere in the definition is mentioned either "sale" or "eyeglasses," two very common English words. But they were used by the same Legislature elsewhere in the act. (See infra § 12[d].) Why not in section 4? Instead, technical words were used which may not have been understood by the legislators themselves.

It ought not be necessary to use a glossary to find the meaning of a penal statute.

Considering the section as a whole we think it defines the practice of optometry substantially as it has been defined by statutes and decisions of other states and does not apply to the sale of eyeglasses as articles of merchandise. *N. J. State Board Optometrists* v. *S. S. Kresge Co.* (1934), 113 N. J. L. 287, 174 A. 353; *Johnson* v. *State* (1927), 22 Ala. App. 149, 113 So. 484; *State* v. *Knapp* (1930), 327 Mo. 24, 33 S. W. (2d) 891.

Appellant makes much of the fact that appellees or their employees sit at a table instead of standing behind a counter and that they hand the glasses to the customers instead of permitting them to select those which they will try. By this method the lenses with which the customers can best see are probably found more quickly than by starting at one end of a row of one hundred and taking them in order. A clerk familiar with his merchandise can frequently help his customer find a fit, but the customer usually determines what suits him. The "trial and error" method depends, not on the salesman's selection, but on the customer's choice after trial. We see nothing in these facts that will convert a sale of eyeglasses into the practice of optometry. The court did not err in holding that appellees were not practicing optometry.

The result reached makes it necessary to decide the second question which is based on Finding 6 that appellees advertise the prices of their glasses. The third conclusion of law is that such advertising by appellees is not a violation of the Optometry Act. Appellants contend that subsection 12(f) of ch. 38 of the Acts of 1935 (§ 63-1019, Burns' 1933 [Supp.], § 13189, Baldwin's Supp. 1935), prohibits such advertising. Appellees say that if the section is properly

construed the prohibition applies only to those who advertise the price of eyeglasses in conjunction with the practice of optometry and if not so construed it is not within the title of the act and therefore is void for violation of Article 4, Section 19 of the Constitution of Indiana.

The Optometry Act was originally passed as chapter 187 of the Acts of 1907. Different sections have been the subjects of amendment at five later sessions of the General Assembly. The penalty section has been twice amended, the last time in 1929. In that year section 18 of the original act was amended to declare unlawful and therefore subject to penalty: (a) to open an office for the practice of optometry without having procured a certificate of registration, (b) for any person not registered to hold himself out as qualified to practice, and (c) for any person not registered to possess certain appliances for use in testing eyes or to sell precision lenses or to replace broken lenses except upon prescription of an optometrist. By section 12 of the Act of 1935 (a), (b) and (c) were substantially re-enacted and three more added: (d) for any person to make a house-to-house canvass for the purpose of selling eyeglasses, (e) practice of optometry without payment of the annual renewal fee for registration, and (f) for any person to publish any advertisement which quotes prices on glasses.

The title of the original act was:

"An act to define and regulate the practice of optometry, providing for the issuance of certificates to practice, providing for a state board of registration and examination, and defining their duties, providing for the collection and disposition of fees and dues, defining certain misdemeanors and providing penalties therefor."

The title was amended in 1935 but the changes do not affect the questions before us.

Some of the subsections of section 12 are clearly within the title of the act. But subsection (f) is not expressly limited to persons engaged in the practice of optometry, is broad enough to apply to any person whatsoever, and if taken at its face value forbids appellees, even though they are not practicing optometry, from advertising the prices of the glasses which they sell. Is this subsection when construed as extensively as its language permits within the title of the act?

The subject of the act is the practice of optometry. Its object is "to define and regulate" such practice. Matters that are regulatory of such practice are clearly covered by the title. To forbid price advertising by an optometrist is regulation of his practice. But to forbid price advertising by appellees is merely regulation of their merchandising.

We do not believe the words "to define" in the title give it broader scope. They probably were inserted that there might be no questions as to the constitutionality of a statutory definition in section 4 of the act differing from the dictionary definition or common understanding of what is comprehended by the word "optometry."

Truthful price advertising is a legitimate incident to a lawful merchandising business. Deprivation of the right so to advertise has been held to violate the due process clause of the Fourteenth Amendment. *Regal Oil Co.* v. *State* (1939), 123 N. J. L. 456, 10 A. (2d) 495. See also *Jones* v. *Bontempo* (1940), 65 Oh. App. 103, 29 N. E. (2d) 428, affirmed (1941), 137 Oh. S. 634, 32 N. E. (2d) 17. We cannot assume that the Legislature intended to permit the sale

of eyeglasses as merchandise but to deprive the dealer of one of the reasonable and lawful means of procuring purchasers for such merchandise.

We are aware that the title of an act should be liberally construed as held in *Alyea* v. *State* (1925), 196 Ind. 364, 147 N. E. 144, and other cases cited by appellant. The purpose of such construction is to ascertain its meaning. The title before us is not ambiguous. The object of the act is to regulate the practice of optometry as defined in the act. The field of regulation is circumscribed by the definition. Advertising and sale of eyeglasses as articles of merchandise are outside that field.

We are fortified in this conclusion by the case of *Kindy Opticians, Inc.* v. *State Board* (1940), 291 Mich. 152, 155, 289 N. W. 112, 113. The title of the Michigan Act was: "An Act to provide for the examination, regulation, licensing and registration of optometrists practicing optometry, and for the punishment of offenders against this Act." It was enacted in 1909 and contained a definition of the practice of optometry which expressly excluded "a person or persons selling glasses as an article of merchandise. . . ." 2 Comp. Laws 1929, § 6787. In 1937 a section was amended making it unlawful for "any person to advertise glasses . . . at a price, . . ." The court said:

> "The record is convincing that the business in which the plaintiff was engaged was that of a dispensing optician. The title of the act relates to optometrists only, and not to opticians. We must, therefore, hold that plaintiff was entitled to the relief sought, namely, a declaration by the court that its business, that of a dispensing optician, cannot be interfered with by the defendants, or any of them, while it is engaged in the lawful prosecution of such business."

The only difference between this case and the one at bar is that the merchandising of eyeglasses was expressly excluded by the statute in Michigan while in Indiana it was excluded because not comprehended in the statutory definition.

A different conclusion seems to have been reached in an unreported case, *Ritholz et al.* v. *Indiana State Board of Registration and Examination in Optometry et al.*, No. 605 in Equity in the District Court of the United States for the Northern District of Indiana, Hammond Division, wherein Judges Sparks, Slick and Baltzell, sitting as a three-judge court, denied an injunction against interference by the State Board with complainants' advertising the prices of their glasses. The first conclusion of law was:

> "That subsection (e) of Section 11, and subsections (c), (d) and (f) of Section 12 of Chapter 38 of the Acts of the General Assembly of Indiana of 1935 are each constitutional and valid, and that said subsections are not, nor are any of them, in conflict with Section 19 of Article IV of the Constitution of the State of Indiana."

We have procured through the courtesy of Judge Slick a complete set of the briefs therein filed. The absence of any opinion in the case prevents our knowing the reasoning which resulted in the court's conclusion.

It is apparent that the complaint was filed at a time when complainants were violating the optometry statute by employing "licensed optometrists to refract the eyes of persons desiring glasses." While the action was pending they changed their practices by placing in their stores "duly licensed physicians . . . who make examinations and collect their own fees." Other details are disclosed in the findings which indicate a reluctant compliance by complainants with the provisions of the optometry law which they were openly violating when

they filed their suit. We think it not unlikely that the learned judges considered the status of complainants to be unlicensed optometrists rather than mere merchandisers. Upon that theory we can agree with the conclusion.

But appellant has repeatedly said in its briefs that when the original complaint was filed in the case at bar, appellees were practicing optometry in violation of the statute and insists that they are now attempting to evade the provisions of the law. Nevertheless finding 6 discloses that such practices ceased in November, 1938, and the only activity in which they were thereafter engaged was the sale of glasses as merchandise. Here the board is asking the injunction. The opposite was true in the Ritholz case and the district court may have had in mind the maxim concerning clean hands.

Appellant also argues that subsection 12(f) is tautological if it does not apply to persons other than licensed optometrists because price advertising is by subsection 11(e) declared to be unprofessional conduct for which the license may be revoked. The answer is simple. It is one thing to have a license revoked, quite another to be fined $300 and imprisoned for four months. The Legislature may in separate sections provide different methods of preventing unlawful practices.

We hold that the provisions of subsection 12(f) do not apply to appellees in connection with their sales as merchandise. We are not required in this case to determine whether a person practicing optometry may engage in price advertising.

Finding no error, the decree is affirmed.

NOTE.—Reported in 41 N. E. (2d) 622, 141 A. L. R. 876.