MOSES CORDIAL *v.* EDGAR A. GRIMM AND HOWARD S. GRIMM.

[No. 3-974A161. Filed April 28, 1976.]

*Stephen P. Rothberg,* of Fort Wayne, *David B. Keller, Parker, Hoover, Keller & Waterman,* of Fort Wayne, for appellant.

*Carl J. Suedhoff, Jr., Hunt, Suedhoff, Borror, Eilbacher & Lee,* of Fort Wayne, for appellee.

HOFFMAN, J.—Plaintiff-appellant Moses Cordial brought this action to recover damages allegedly resulting from the legal malpractice of defendants-appellees Edgar A. Grimm

and Howard S. Grimm. The trial court granted a motion for summary judgment made by the appellees, and entered a judgment in their favor. Cordial then filed a motion to correct errors, which was overruled by the trial court, and he subsequently perfected this appeal.

The sole issue presented by this appeal is whether the trial court erred in granting such summary judgment. In passing upon this question, it must be determined whether the trial court was correct in holding that there was no genuine issue as to any material fact. Trial Rule 56 (C), Ind. Rules of Procedure; *Glosser, et al.* v. *New Haven* (1971), 256 Ind. 33, 267 N.E.2d 67; *Brutus* v. *Wright* (1975), 163 Ind.App. 366, 324 N.E.2d 165. In determining whether such a question of material fact exists, only the evidence and inferences therefrom most favorable to the non-moving party may be considered; all conflicts in the evidence must be resolved against the party seeking summary judgment. *Surratt* v. *Petrol, Inc.* (1974), 160 Ind.App. 479, 312 N.E.2d 487 (transfer denied).

The facts and inferences therefrom most favorable to appellant Cordial in the record of this cause establish that the appellant engaged attorney Edgar Grimm to represent him in a workmen's compensation action in December of 1966. Such action was terminated adversely to appellant in November of 1967. In March of 1968 attorney Howard Grimm initiated a second claim for workmen's compensation on appellant's behalf based upon the same injury. Such second claim was denied by a single hearing member of the Board in February of 1969 on the ground that it was barred by the prior claim and determination. The full Industrial Board sustained such finding in March of 1971.

Appellant then contacted numerous attorneys, presumably in reference to the alleged malpractice of the appellees, but did not retain an attorney to prosecute an action against the appellees. Ultimately, he commenced this action *pro se* on March 24, 1972.

Shortly after the commencement of this action, the appellees filed their motion for summary judgment. They asserted therein that the appellant's action was barred under the applicable statute of limitations because his right to maintain this action had arisen more than two years prior to its commencement. On appeal, the appellant asserts that this action was not so barred.

The trial court did not specify what statute of limitations it relied upon in granting summary judgment for the appellees. The appellant asserts that no statute of limitations barred his claim, while the appellees assert that two statutes of limitation are applicable to this case and that the appellant's claim is barred by both such statutes.

The first statute of limitations whose applicability is questioned by the parties is IC 1971, 34-1-2-2 (Burns Code Ed.), which provides, in pertinent part:

"The following actions shall be commenced within the periods herein prescribed after the cause of action has accrued, and not afterwards.

"First. For * * * injuries to personal property, * * * within two [2] years: * * *."

In ruling upon the applicability of this statute, we must initially approach the question of the nature of appellant's cause of action. Although he concedes that his action has many of the characteristics of a tort claim, appellant has attempted to characterize his cause of action as a breach of an implied contract of employment, and to thereby render applicable the longer statute of limitations[1] pertaining to contracts not in writing. In making this assertion appellant has, apparently unwittingly, stumbled across a question which provoked much litigation in relation to medical malpractice actions in the years before the adoption of the present Indiana statute of limitations applicable to such actions. Stated classically, the question is: Where a tort arises out of a contract, is

---

1. IC 1971, 34-1-2-1 (Burns Code Ed.).

the nature of the resulting action *ex contractu* or *ex delicto,* for the purposes of the application of a procedural statute imposing a limitation on the commencement of such action? *See, generally,* Anno. 1 A.L.R. 1313 (1919), as supplemented by Anno. 157 A.L.R. 763 (1945).

The Indiana cases which directly deal with this question were decided in the area of Field Code pleading. *See, e.g., Staley* v. *Jameson* (1874), 46 Ind. 159; *Boor, Administrator, et al.* v. *Lowery* (1885), 103 Ind. 468, 3 N.E. 151. At this time, each pleading paragraph of a complaint was required to contain sufficient averments of fact within itself to reveal the theoretical nature of the cause of action to the court. *Sickels* v. *Aetna Securities Co.* (1942), 220 Ind. 347, 351, 41 N.E. 2d 947; *State* v. *Adams Express Co.* (1909), 172 Ind. 10, 87 N.E. 712; *Chicago & Erie R. Co.* v. *Monesmith* (1941), 110 Ind. App. 281, 37 N.E.2d 724. In those cases, our courts determined the question of the nature of an action such as the case at bar by reference to the theory stated in the complaint. *See, e.g., Lane* v. *Boicourt* (1891), 128 Ind. 420, 27 N.E. 1111.

However, under our present Indiana Rules of Procedure, a party commencing a civil action is required to include in his complaint only a short and plain statement of his claim, and a demand for relief. Trial Rule 8(A), Ind. Rules of Procedure. The complaint need not disclose the general legal theory upon which the plaintiff will proceed, but rather only the operative facts involved in the litigation. *State* v. *Rankin* (1973), 260 Ind. 228, 294 N.E. 2d 604.

In conformity with these principles, appellant alleged in his original and amended complaints the facts constituting the alleged malpractice by the appellees, and omitted any reference to his legal theory of the action. In ruling on appellees' motion for summary judgment, however, the trial court was required to determine what statute of limitations was

applicable to the cause of action stated by appellant by determining the legal basis of the action.

It is proper for a trial court to make such a determination in order to determine what law is applicable to a particular case. *Sickels* v. *Aetna Securities Co., supra.* As stated by Judge Dillin in the case of *Koehring Company* v. *National Automatic Tool Co.* (1966), 257 F. Supp. 282:

> "The general rule is that, especially where forms of action have been abolished, as in Indiana, it is the nature or substance of the cause of action, rather than the form of the action, which determines the applicability of the statute of limitations. 53 C.J.S. Limitations of Actions § 33 p. 982."
>
> *Similarly, see,* 51 Am. Jur. 2d, Limitation of Actions § 105, 677-78.

It will be noted that the American Jurisprudence section cited above states that some older caselaw authority exists in Indiana which is contrary to such general rule. However, as recounted hereinabove, such caselaw arose under a substantially different system of civil procedure and was premised upon the legal theories of such system. Today a dominant trend in the law, as exemplified by our present Indiana Rules of Procedure, is the recognition of substance and the disregard of mere form. The general rule quoted hereinabove serves this end. Furthermore, the older Indiana caselaw authorities now under consideration are of dubious vitality, due to the language of subsequent decisions. *See,* Anno. 1 A.L.R. 1313, at 1316-18, *supra;* and Anno. 80 A.L.R. 2d 320, § 6 (b), at 342-43.

Thus, it is both necessary and appropriate under the current state of the law for the trial court to rule upon the legal nature or substance of a cause of action when the applicability of a statute of limitations to such cause of action is in issue. *See,* 51 Am.Jur. 2d, *Limitation of Actions,* § 62, at 640-41.

In the case at bar, the substance of the factual allegations

which the appellant made in his complaint is that the appellees' actions or inactions rendered his valid workmen's compensation claim worthless.

Such claim was a chose in action, and as such must be considered to have been the personal property of appellant. *See, Gregory* v. *Colvin* (1963), 363 S.W. 2d 539, 540, 235 Ark. 1007; *Peavy Lumber Company* v. *Murchison* (1961), 130 So. 2d 338, 340, 272 Ala. 251. *Cf: Merritt* v. *Economy Dept. Store, Inc.* (1955), 125 Ind.App. 560, 128 N.E.2d 279. It is the alleged tortious damage to such personal property which gave rise to appellant's cause of action, and it is for such damage that he sought compensation.

In light of the foregoing, the trial court could have properly concluded that the provision of IC 1971, 34-1-2-2, *supra,* limiting the commencement of actions for damage to personal property was applicable to appellant's cause of action, because such aspect of this case was the gravamen of the case. *See, Rush* v. *Leiter* (1971), 149 Ind.App. 274, 271 N.E.2d 505.

The second statute of limitations, the applicability of which is questioned by the parties, is IC 1971, 34-4-19-1 (Burns Code Ed.), which provides:

> "Malpractice—Limitation of actions.—No action of any kind for damages, whether brought in contract or tort based upon professional services rendered or which should have been rendered, shall be brought, commenced or maintained, in any of the courts of this state against physicians, dentists, surgeons, hospitals, sanitariums, or others, unless said action is filed within two [2] years from the date of the act, omission or neglect complained of."

Although this statute has historically been applied only to medical malpractice actions, it would be improper to summarily dispose of this issue. The contentions of the parties as to this statute must be given a careful consideration on their merits, because the question which they pose concerns an arguable ambiguity in the wording of this statute which would affect its application.

Because this issue concerns the resolution of a statutory ambiguity, certain basic rules of statutory construction must be considered in ruling upon the contentions of the parties. One of the most basic rules of statutory construction is that the primary objective in construing an ambiguous statute must be to ascertain and effectuate the general intendment of the statute. *City of Gary* v. *Baker* (1975), 166 Ind.App. 26, 333 N.E.2d 808; *Kirby* v. *Indiana Employment Security Board* (1973), 158 Ind.App. 643, 304 N.E.2d 225.

And, in construing a statute, a court must endeavor to do so within the context of logic and reason. *Pickens* v. *Pickens* (1970), 255 Ind. 119, 128, 263 N.E.2d 151. It is also the rule that statutes of limitation are statutes of repose which are founded upon considerations of justice and sound public policy, and are, therefore, favored by the courts. *Horvath* v. *Davidson* (1970), 148 Ind.App. 203, 264 N.E.2d 328; *Marshall, Auditor* v. *Watkins* (1939), 106 Ind.App. 235, 18 N.E. 2d 954.

Further, statutes of doubtful meaning should be considered in their entirety, including their title, to determine legislative intent; *State ex rel. 1625 E. Wash. R.Co.* v. *Markey, Judge* (1937), 212 Ind. 59, 7 N.E.2d 989; *Board Comrs.* v. *Bd. Sch. Comrs. of Indpls.* (1960), 130 Ind.App. 506, 166 N.E.2d 880, and such statutory titles should be liberally construed in so determining legislative intent. *State ex rel. Booth* v. *Beck Jewelry Enterprises* (1942), 220 Ind. 276, 41 N.E.2d 622, 141 A.L.R. 876.

Appellant asserts that the trial court erred if it applied IC 1971, 34-4-19-1, *supra,* to this case for the reason that such statute is applicable solely to *medical* malpractice actions. This is because, he contends, the wording of the statute stating that it applies to actions "against physicians, dentists, surgeons, hospitals, sanitariums, or others", limits the otherwise general wording of the statute, and prevents it from

applying to malpractice actions based upon the rendition of professional services by attorneys.

The proper legal basis for this contention of the appellant is the doctrine of *ejusdem generis*. The tenets of this doctrine have been articulately expressed by our Supreme Court in *Kidwell* v. *State* (1967), 249 Ind. 430, at 432, 230 N.E.2d 590, at 591-92 (*Cert. denied*, 392 U.S. 943, 88 S.Ct. 2326, 20 L.Ed. 2d 1405), as follows:

> "Under the doctrine of *Ejusdem Generis,* when words of specific or limited signification in a statute are followed by general words of more comprehensive import, the general words are construed to embrace only such things as are of like kind or class with those designated by the specific words unless a contrary intention is clearly expressed. *Short* v. *State* (1954), 234 Ind. 17, 122 N.E.2d 82 and cases cited therein.

> "But *Ejusdem Generis* is not a doctrine of mandatory application. It is merely one method available for determining the legislative intent in connection with a statute. *Woods* v. *State* (1957), 236 Ind. 423, 140 N.E.2d 752. The only purpose of *Ejusdem Generis* is to aid the courts in determining the true meaning of a statute. It should not become a device for unduly narrowing the scope and operation of statutes to an extent never envisioned by the General Assembly. *Sherfey* v. *City of Brazil* (1938), 213 Ind. 493, 13 N.E.2d 568.

> "Too often it seems the doctrine is employed judicially to exclude cases from the scope of a statute when the language of the statute is clearly applicable to them. In other words the doctrine is often used to obviate legislative intent under the guise of judicial interpretation." *Similarly, see, Woods* v. *State* (1957), 236 Ind. 423, 427-28, 140 N.E.2d 752, 753-54.

An examination of IC 1971, 34-4-19-1, *supra,* must be made in order to determine whether the Legislature has expressed an intent therein that it should be of general applicability, or whether it appears that the purpose of the statute is such that it will not be unduly narrowed by the application of the doctrine of *ejusdem generis*. The title which the Legislature gave to the Act containing this statute is "An Act concerning

proceedings in civil malpractice cases." Such title discloses no legislative intent that this statute be applied only in medical malpractice cases.

The text of IC 1971, 34-4-19-1, *supra,* quoted above, must next be considered. An examination of those portions of this statute other than the portion which appellant contends warrants the application of the doctrine of *ejusdem generis* likewise discloses no legislative intent to limit its application to only those malpractice actions which arise from the performance of medical services. Had the Legislature wished to enact a statute applicable only to medical malpractice actions, it would have so indicated in its title or text through the use of terms applicable to such actions. However, such is not the case.

Nor can it be contended that malpractice actions against attorneys were a phenomenon of which the Legislature was unaware when it enacted IC 1971, 34-4-19-1, *supra,* in 1941. Such actions have long been a part of the Indiana practice. *See, e.g., Newman v. Gates* (1904), 165 Ind. 171, 72 N.E. 638.

In light of these considerations, it must be concluded that the Legislature did not intend to limit the application of IC 1971, 34-4-19-1, *supra,* to the manner in which it has historically been applied. Thus, it would be improper to apply the doctrine of *ejusdem generis* to limit the word "others", found within the phrase enumerating those to whom the statute applies, to medical practitioners. Rather, this statute must be considered to be applicable to all "malpractice" actions.

As to what actions are predicated upon "malpractice" so as to fall within the ambit of IC 1971, 34-4-19-1, *supra,* the common law definition of such word is stated in *Richardson v. Doe* (1964), 176 Ohio St. 370, 199 N.E.2d 878, 879, 8 A.L.R. 3d 1331. Therein, the Ohio Supreme Court held that although the term "malpractice" is sometimes loosely used to refer to the negligence of any professional group, it is still

technically and legally limited to the professional misconduct of the licensed, learned members of the Bar and the medical profession. Accordingly, the application of IC 1971, 34-4-19-1, *supra,* must be construed to be so limited, save for the exceptions enumerated therein.

The trial court did not err in holding that a two-year statute of limitations was applicable to the appellant's cause of action.

The next issue which must be considered herein is whether the running of the foregoing statutes of limitation was tolled by a fraudulent concealment of appellant's claim by the appellees. Appellant's assertion in this regard is made by analogy to the rule stated in *Guy* v. *Schuldt et al.* (1956), 236 Ind. 101, 138 N.E.2d 891. The holding of *Guy* v. *Schuldt, et al., supra,* in this regard was recently summarized by this court in *Toth* v. *Lenk* (1975), 164 Ind.App. 618, at 622, 330 N.E.2d 336, at 339, in this manner:

> "In Guy v. Schuldt, *supra,* our Supreme Court held that fraud would estop a physician from relying on the statute of limitations and that accordingly the statute could not be set up by demurrer since to do so would preclude the plaintiff's ability to assert fraud in a reply.
>
> "The *Guy* court surmised that due to the nature of the physician-patient relationship, the running of the statute might be prevented. The Court reaffirmed the general principles of an estoppel for fraud, which require both intentional conduct by the defendant, and that the plaintiff, relying upon the defense, not only be unaware of the fraud, but also have been unable to discover it in the exercise of diligence. The duty of the physician to disclose that which he knows, or in the exercise of reasonable care should have known, satisfies the requirement of conduct and constitutes a constructive fraud.
>
> "Under this analysis the constructive fraud would terminate with the termination of the physician-patient relationship and the statute would commence to run. *Guy, supra; Ostojic* v. *Brueckmann* (C.A. 7th 1968), 405 F. 2d 302." (Footnote omitted.)

A review of the record of this cause reveals that the statements of fact and the inferences therefrom most favor-

ble to appellant pertaining to the termination of his attorney-client relationships with the appellees are that Edgar Grimm's last contact with the appellant was on November 18, 1967, and that Howard Grimm last acted as an attorney for appellant on June 27, 1969. The appellant has never asserted that he consulted with either of the appellees after such dates, or that they acted after such dates to conceal their alleged malpractice.

However, the appellant infers that a constructive fraudulent concealment of his cause of action occurred after the termination of his professional relationships with appellees "owing to the concatenation of events * * *." It must be surmised that appellant would consider the continuing pendency before the Board of the appeal of the second claim as an implied representation by appellees that such appeal was a proper procedure. However, as previously stated, all of the facts which were before the trial court indicate that the professional relationships between the appellant and the appellees terminated no later than June of 1969, long before such appeal was decided in March of 1971. In the case at bar, once such relationship terminated, any constructive concealment also terminated. Appellant has not asserted any claim of fraudulent concealment which would toll the running of the statutes of limitation discussed hereinabove. *Guy* v. *Schuldt, et al., supra; Toth* v. *Lenk, supra; Brown* v. *Gardner* (1974), 159 Ind.App. 586, 308 N.E.2d 424.

Appellant next contends that the statutes of limitation considered hereinabove should commence to run only upon the actual discovery of a right of action by the injured party. However, such is not the law in Indiana. *Toth* v. *Lenk, supra* (1975), 164 Ind.App. 618, 330 N.E.2d 336; *Merritt* v. *Economy Dept. Store, Inc., supra* (1955), 125 Ind.App. 560, 128 N.E.2d 279.

The final contention made by appellant is that his causes of action did not accrue until he suffered both an injury to

his property and damages, and that he did not suffer damages until his second appeal to the Board was denied in March of 1971. Appellant's statement of the general rule is correct. *Montgomery* v. *Crum* (1928), 199 Ind. 660, 678, 161 N.E. 251; *Merritt* v. *Economy Dept. Store, Inc., supra.* However, his assertion with regard to the time his damages occurred is erroneous.

Even assuming, without deciding, that the general rule stated above is applicable to appellant's cause,[2] the damage to such property right occurred when his first attempt to recover thereon was terminated adversely to him with prejudice to his ability to maintain any further proceedings thereon. Although he asserts that a "possibility of success" existed until the second action was terminated, the allegations of appellant's original complaint establish that such second action was barred by reason of his first claim. Thus, appellant suffered the damage which is the basis of this case in November of 1967 and the trial court correctly concluded that appellant's cause of action accrued more than two years prior to the commencement of this case.

The appellant has shown no reversible error in the trial court's ruling on the motion for summary judgment; and the judgment of the trial court must be affirmed.

Affirmed.

Staton, P.J., concurs in result; Garrard, J., concurs with opinion.

### CONCURRING OPINION

GARRARD, J.—I agree that plaintiff's action was subject to the two year statute of limitations provided by IC 1971, 34-1-2-2. I therefore concur without reaching the question of whether IC 1971, 34-4-19-1 might apply to malpractice claims against the legal profession.

---

2. The necessity of the occurrence of damages to the accrual of a malpractice cause of action has been viewed divergently by the courts. See, Anno. 18 A.L.R. 3d 978, § 5, at 991-996.

NOTE.—Reported 346 N.E.2d 266.