PINNEY *v.* THE STATE.

[No. 19,480.  Filed February 12, 1901.]

CRIMINAL LAW.—*Variance.*—*Idem Sonans.*—The names Pinney and Penny are *idem sonans,* and the use of the former name in the assignment of errors on appeal from a conviction in the latter name does not constitute a fatal variance. *pp. 168, 169.*

SAME.—*Indictment.*—*Duplicity.*—*False Pretenses.*—An information charging that defendant obtained possession of certain property by pretending that he would pay $125 therefor and gave in payment money issued by the Confederate States of America, pretending that the same was good and lawful money of the United States is not bad for duplicity, since it is not charged that the property was obtained by color of false token or writing. *pp. 169-172.*

From the Monroe Circuit Court.    *Affirmed.*

*J. E. Henley* and *J. B. Wilson,* for appellant:

*W. L. Taylor,* Attorney-General, *Merrill Moores, C. C. Hadley* and *J. A. Zaring,* for State.

JORDAN, J.—The record in this appeal discloses that "Isaac Penny" was tried and convicted of the crime of having obtained certain property by means of false pretenses and was sentenced by the judgment of the lower court to be confined in the state prison.    It appears from the notice of appeal served upon the proper officers, and also from the assignment of errors in this court, that the case is prosecuted in the name of "Isaac Pinney."    The State contends that therefore no question is presented, for the reason that the alleged errors are not assigned in the name of "Isaac Penny", the proper appellant, but instead are assigned in the name of "Isaac Pinney", which name, as insisted, is quite different from the name of the convicted person, and that, therefore, the rule *idem sonans* is not applicable.    If "Penny" and "Pinney" are not *idem sonans* then there is a fatal variance and the alleged errors can not be considered, as the principle is well settled that the assignment of errors in this court must be in the name of as well as against the proper party.    *Braden* v. *Leibenguth,* 126 Ind. 336.    The law does not regard orthography, and no harm can result from spelling a name incorrectly, provided it is *idem sonans* with the correct spelling.    If the name is spelled differently from that of the accurate spelling thereof, but nevertheless conveys to the ear, when pronounced according to the usual recognized rule of acoustics a sound which is practically the same as the sound of the true name; or, in other words, if the names may be sounded alike without doing violence to the powers of the letters in the variant orthography, this is a sufficient designation of the person, and no advantage can be taken of the clerical error or variance.    1 Bishop's New Crim. Proc. §688; 14 Ency. Pl. & Pr. 288, cl. 10; *Black*

v. *State,* 57 Ind. 109; *State* v. *McCormick,* 141 Ind. 685; *Smurr* v. *State,* 88 Ind. 504.

The following names, under the decisions of this court, have been held to be *idem sonans:* "Conn" and "Corn," *Moore* v. *Anderson,* 8 Ind. 18; "Adanson" and "Adamson", *James* v. *State,* 7 Blackf. 325; "Beckwith" and "Beckworth", *Stewart* v. *State,* 4 Blackf. 171; "Geessler" and "Geissler", *Cleaveland* v. *State,* 20 Ind. 444; "McGloflin" and "McLaughlin", *McLaughlin* v. *State,* 52 Ind. 476; "Meyer", "Meyers", and "Mayer", *Smurr* v. *State, supra.* See, also, *Idem Sonans,* Bouvier's Law Dict. 974, and authorities there collected. 2 Woollen's Tr. Proc. §3197. It is manifest, we think, that when tested by the rule asserted by the authorities to which we have referred that the names "Pinney" and "Penny" may be held to be *idem sonans,* and designate the same individual. Consequently there is no material variance between the name of the convicted party disclosed by the record and the name appearing in the assignment of errors.

The only question presented and urged by counsel for appellant is the sufficiency of the affidavit and information to withstand the motion to quash. It is urged as a principal reason, by counsel, that the information is bad for duplicity. Appellant was convicted, as previously stated, of having violated the statute relating to false pretenses, which reads as follows: "Whoever, with intent to defraud another, designedly, by color of any false token or writing, or any false pretense, obtains the signature of any person to any written instrument, or obtains from any person any money, or the transfer of any bond, bill, receipt, promissory note, draft, or check, or thing of value, or whoever sells, or barters, or disposes of, or offers to sell, barter or dispose of, any transfer, bond, bill, receipt, promissory note, draft, or check, or anything of value, knowing the signature of the maker, indorser, or guarantor thereof to have been obtained by any false pretense, shall be imprisoned in the state

prison not more than seven years nor less than one year, and fined in any sum not more than $1,000 nor less than $10." §2352 Burns 1894, §2204 Horner 1897.

The affidavit and information in charging the offense are alike. The information, omitting the formal parts, is as follows: "That Isaac Penny and John Mann on the 20th day of June, 1900, at said county and State, did then and there feloniously, and with intent to defraud said John Galyan, buy from him a certain team of horses then and there the property of said Galyan, of the value of $125, by pretending to said Galyan that they, the said Penny and Mann would give said Galyan $125 for said horses, and did then and there feloniously obtain from said Galyan his said team of horses by giving to said Galyan bills of various denominations, issued by the so-called Confederate States of America, amounting in the aggregate on the face of them to $125, and then and there falsely, knowingly and feloniously pretending to said Galyan that the same was $125 good and lawful money of the United States, when in truth and in fact the same was of no value whatever, as the said John Mann and Isaac Penny then and there well knew. And the said John Galyan being then and there unable to read and write and then and there relying upon and believing said representation to be true, and having no other means of ascertaining the truth of the same, was then and there by reason of said false representations so feloniously made by said Mann and Penny as aforesaid, induced to part with his said horses, and did then and there deliver them to said Penny and Mann and receive in payment therefor said bills of the so-called Confederate States of America as aforesaid. That said Penny and Mann then and there obtained said horses by reason of said false and fraudulent representation so falsely, feloniously, and knowingly made to said John Galyan as above set forth."

It will be observed that the pleading in question alleges that appellant and another "did then and there feloniously

and with intent to defraud John Galyan buy from him," etc. This, counsel for appellant contend, precludes the idea of false pretenses or fraud, as the word "buy", it is insisted, must be held to mean that the accused gave a good consideration for the horses obtained. In this contention, however, counsel are mistaken. The gist of the offense is that appellant after negotiating for the purchase of the horses— the word "buy" in the information seems to have been employed in the sense of negotiating—paid the purchase price of $125 in worthless confederate money, which he falsely represented to be that amount in good and lawful money of the United States, which representation he knew to be false, and by this means obtained possession of the horses. It appears that the buying or purchase of the animals in question was done "feloniously and with intent to defraud", hence the purchase, under such circumstances, was not legitimate upon the part of the appellant, but seems to have been one of the steps in the fraudulent transaction leading up to its final consummation by which the possession of the property was fraudulently obtained from Galyan.

The further insistence of appellant is that the information is bad because of duplicity, for the reason, as claimed, that it must be held to charge that the property in question was obtained by color of a false token or writing, which consisted of the confederate bills, and also was obtained through false representations, and therefore more than a single offense is charged in the same count of the information. This contention is not sustained by the averments of the pleading. It does not charge that the property was obtained by color of a false token or writing, neither does it proceed upon the theory that the confederate bills were in the nature of a false token or writing. It may be assumed that these bills when issued were genuine and valid obligations of the pretended government of the so-called Confederate States of America. They were, however, at the time they were passed to Galyan in payment for his horses, and

a long time prior thereto, of no value, wholly worthless. This fact, it is charged, was known to appellant, nevertheless he falsely represented and pretended that the bills were $125 of good and lawful money of the United States, and thereby induced the owner to receive and accept them in payment for his property, and by reason of such false representations he and his associate obtained the possession thereof. The false representations made in regard to the bills were in respect to a material existing fact, and under the circumstances they were such upon which the party defrauded had a right to rely. *Shaffer* v. *State,* 82 Ind. 221; *Commonwealth* v. *Stone,* 45 Mass. 43; 2 Bishop's New Crim. Law, §148.

It follows that the information is not open to the objections urged by appellant. As to whether it is sufficient in all other respects, we do not stop to consider. The judgment is affirmed.