WOODS v. STATE OF INDIANA.

[No. 29,439. Filed March 11, 1957.]

424

*James D. Lopp* and *Theodore Lockyear, Jr.*, both of Evansville, for appellant.

*Edwin K. Steers,* Attorney General, and *Owen S. Boling,* Deputy Attorney General, for appellee.

ARTERBURN, J.—This is an appeal by Norman Woods from a judgment of the Vanderburgh Circuit Court in a trial without a jury. Appellant was convicted under Count 2 of an affidavit charging him with obtaining property under false pretense.

The appellant assigns as sole error the overruling of his motion for a new trial, and presents in the argument

section of his brief two main points, namely: (1) the overruling of appellant's motion to quash Count 2 of the affidavit; (2) that the finding of the court is not sustained by sufficient evidence.

The appellant in support of his position contends that the rule of *ejusdem generis* applies in construing the statute which sets out the character of the property that is subjected to the crime of being obtained under or by means of false pretense. In this case the affidavit charged and the proof showed that the appellant obtained a Remington shotgun of the value of $93.35 by means of a certain forged invoice bearing the name Clyde Dukes. The statute upon which this charge is based reads as follows:

> "Whoever, with intent to defraud another, designedly, by color of any false token or writing, or any false pretense, obtains the signature of any person or persons, firm or corporation to any written instrument, or obtains from any person, persons, firm or corporation any money, or the transfer of any bond, bill, receipt, promissory note, draft, or check, or thing of value, or whoever sells, barters, or disposes of, or offers to sell, barter or dispose of any transfer, bond, bill, receipt, promissory note, draft or check, or anything of value, knowing the signature of the maker, indorser, or guarantor thereof to have been obtained by any false pretense, shall, on conviction, be imprisoned. . . ." Acts 1907, ch. 228, §1, p. 431, being §10-2103 Burns' 1956 Replacement.

The appellant directs our attention specifically to the words "obtains from any person, persons, firm or corporation any money, or the transfer of any bond, bill, receipt, promissory note, draft, or check, or thing of value." It is appellant's position that under the rule of *ejusdem generis* to sustain the conviction, the evidence must show that the appellant obtained property limited to the class enumerated; that the specific phrase "or thing of value" means in reality *like things*

*of value,* such as those previously enumerated—commercial paper and like intangibles.

The doctrine of *ejusdem generis* is a well-known principle of limitation which is used in interpretations to confine a general catchall phrase to a classification covered by the previous enumerations. *Miller* v. *State* (1889), 121 Ind. 294, 23 N. E. 94; *Wiggins* v. *State* (1909), 172 Ind. 78, 87 N. E. 718; *North American Acc. Ins. Co.* v. *Pitts* (1925), 213 Ala. 102, 104 So. 21, 40 A. L. R. 1171; *United States* v. *Florida East Coast Ry. Co.* (1915), (C. C. A. 5th), 222 Fed. 33; 28 C. J. S., Ejusdem, p. 1049.

The course of this doctrine in Indiana has not been smooth. In *McNamara* v. *State* (1932), 203 Ind. 596, 181 N. E. 512, the principle of *ejusdem generis* was approved but it was held not applicable to the words "any pecuniary advantage." In *Sherfey* v. *City of Brazil* (1938), 213 Ind. 493, 13 N. E. 2d 568, it was held "any public place" was not limited to the previous enumeration of streets and alleys, but included municipal parks, and the rule was not invoked. In *Dowd, Warden* v. *Sullivan* (1940), 217 Ind. 196, 27 N. E. 2d 82, on the contrary it was held "any prisoner" was limited only to those under the control of the Board of Managers of the Reformatory. In *Short* v. *State* (1954), 234 Ind. 17, 122 N. E. 2d 82, this court held a pop bottle was included in "any other deadly or dangerous weapons", although bottles and such like things were not included in the group specifically enumerated in the criminal statute.

We grant that the case here is a typical one for consideration of the doctrine of *ejusdem generis;* however, it is not one of mandatory application. In our opinion it is merely one of a number of helpful aids used in the various methods of reaching the meaning intended where vagueness and uncertainty are

claimed to exist. As Professor Horack says, "Fortunately, the maxim of *ejusdem generis* is not a compelling rule, and as frequently as it is applied it is ignored or rejected." The Disintegration of Statutory Construction (1949), 24 Ind. L. J. 335, 339; 82 C. J. S., Statutes, §332b, p. 662.

On the motion to quash it is claimed that there is an existing uncertainty and indefiniteness in the offense charged by reason of the statute being too broad and indefinite unless the rule of *ejusdem generis* is applied, and as a result of such application a shotgun does not fall within the class enumerated. Such contentions, which are frequently presented in the construction of legislation, places the draftsman between the proverbial two horns of a dilemma. If he enumerates and specifies he hazards a limitation to a narrow classification under *ejusdem generis*, while if he uses words of general import he faces the risk that the wording will be void for uncertainty and vagueness.

It is trite to say, but still true that words, after all, are merely signs or symbols of meaning. The meaning of the same words varies with the person, the time, and the place, not to mention other surrounding circumstances. In the expression of our ideas and meaning we strive with inexact tools to hue out works of refinement with precise lines, never able to reach perfection. The writing of instructions to juries is another field in which we are confronted eternally with like attempts and failures at such exactness and precision. The extrinsic and influencing factors in the use of words should never be eliminated in our consideration of the meaning intended.

In the process of interpretation the court's main "rule" should be to use all sources available and relevant to determine how the legislature intended the statute to operate, and not place itself in a straight-

jacket under the guise of intrinsic limitations. 82 C. J. S., Statutes, §332b, p. 662.

A play may be made here with the words "any bond, bill, receipt, promissory note, draft, or check, or thing of value", in an attempt to reach a meaning. It might be urged that if the legislature had intended to restrict the meaning of "or thing of value" it would have done so by using the words "like things of value." We are not, however, in statutory construction confined to the four corners of the instrument, so to speak, in search for the correct meaning. We may look outside for any relevant help available.

We find that the statute under consideration is the only general criminal statute on false pretense. To be realistic in this case if the appellant had read the statute or sought advice from counsel prior to the alleged offense, could it be said he would have been misled in believing that procuring a shotgun by false pretense would not come within the terms "or thing of value?" Any reasonable person would recognize that a gun is a thing of value. "Rules" of interpretation are applicable where uncertainty exists. If rigidly applied they many times cause as much uncertainty as certainty in the law and occasional resulting absurdities in meaning. When the application of a rule reaches freakish or unusual results its usefulness ends.

A history of the wording of the statute under consideration supports us in an objective search for its meaning. At common law through some quirk of reasoning written instruments were not the subject of larceny, while a mere piece of paper without writing or stamp thereon was of some intrinsic value, and was a subject of larceny. With an agreement in writing on it, "this paper then becomes a mere chose in action or more properly speaking, mere evidence of

a chose in action, and loses its value, and an existence as property. It is not larceny, therefore, at common law, to take and carry away a promissory note, bank note, bond, or any other writing evidencing a contract." Clark & Marshall, Law of Crimes, 3rd Ed., §311, p. 391; 2 Burdick, Law of Crime, §513, p. 279; 2 Wharton's Criminal Law, 12th Ed., §1115, p. 1424; Hall, Theft, Law and Society, pp. 88, 89, 96, 97.

It is logical therefore in defining the statutory crimes of wrongful taking of property that the common law rule should be enlarged by enumerating choses in action and such intangibles along with other things of value, and thus make them all subject to the same offense. This cured a defect in the common law charges. The enumeration was not intended to limit but rather extend the scope of the property covered by the crime.

The purpose of the general criminal statute on false pretense has always been clear. From one enactment after another for more than one hundred years, it has contained practically the same wording, which consists of an enumeration of such words as notes, bonds, receipts, and similar intangibles followed by the words, "or thing of value." *State* v. *Magee* (1858), 11 Ind. 154; *Wagoner* v. *State* (1883), 90 Ind. 504.

. During that one hundred years "thing of value" has been given an unquestioned and unchallenged meaning, not limited by the rule of *ejusdem generis*. The acceptance of this broad meaning has been so general that not once in all that time has the meaning been questioned in any criminal proceeding under the statute so far as we are able to find. Offenses have been charged and convictions have been based upon obtaining chattels and other personal property which do not fall within the enumerated classification of commercial paper and intangibles. In *Clifford* v. *State* (1877), 56 Ind. 245, the defendant was charged with obtaining furniture by

false pretense. In *Keller* v. *State* (1875), 51 Ind. 111, wagons were involved. In *State* v. *Snyder* (1879), 66 Ind. 203, the charge was obtaining board and room by false pretenses. In *State* v. *Timmons et al.* (1877), 58 Ind. 98, the defendant was charged with obtaining a horse by false pretense. In *Wagoner* v. *State, supra,* "a thing of value" in the offense charged included calico, muslin, cotton, and other merchandise. In *State* v. *Connor* (1887), 110 Ind. 469, 11 N. E. 454, clothing, and in *Pinney* v. *State* (1901), 156 Ind. 167, 59 N. E. 383, a team of horses was obtained by such unlawful means. In *Chappell* v. *State* (1940), 216 Ind. 666, 25 N. E. 2d 999, the defendant was charged with obtaining watches and jewelry by means of false pretense.

The statute defining embezzlement as a crime in this state has much the same wording, and has acquired a like meaning. *Gentry* v. *State* (1945), 223 Ind. 459, 61 N. E. 2d 641.

Thus it may be seen that the words under consideration through a long period of time have acquired a generally accepted meaning not to be restricted by the rule of *ejusdem generis.* Apparently the legislature by re-enactment in 1852, 1905 and 1907 has relied upon such acceptance, and found no reason for changing the wording in order to broaden the meaning. *State* v. *Ensley* (1912), 177 Ind. 483, 97 N. E. 113; *Marshall* v. *Matson* (1908), 171 Ind. 238, 86 N. E. 339; *Board etc.* v. *Conner* (1900), 155 Ind. 484, 58 N. E. 828.

Stability and certainty are important to the law. Once they have been established and there has been reliance thereon they should not be disturbed for some minor reason. Other cases supporting the viewpoint here taken are: *State* v. *Gillespie* (1879), 80 N. C. 396; *Commonwealth* v. *Kenmont Coal Company* (1923), 199 Ky. 826, 251 S. W. 1018.

The appellant further contends that the evidence is not sufficient to sustain the conviction for the reason there is no proof of any reliance upon any false pretense made by the appellant at the time of obtaining the shotgun. A review of the evidence shows conclusively that the appellant presented himself to the salesman in the store, at the time of obtaining the shotgun. A review of the evidence shows conclusively that the appellant presented himself to the salesman in the store, and at the time represented that he was one Clyde Dukes, purchased the gun, and signed an invoice using the name of Clyde Dukes. That thereupon the salesman called the office to get approval of the sales transaction on credit. The office, as a result, authorized and approved the sale to Clyde Dukes. In our opinion this was a reliance upon the misrepresentation and false pretense of the appellant by which he obtained the shotgun. The evidence sufficiently supports the judgment of the court.

The judgment is affirmed.

Achor, C. J., Emmert, Bobbitt and Landis, JJ., concur.

NOTE.—Reported in 140 N. E. 2d 752.