293 N.E.2d 237 (1973)
MORGAN COUNTY RURAL ELECTRIC MEMBERSHIP CORPORATION, Defendant-Appellant,
v.
INDIANAPOLIS Power & Light Company, Plaintiff-Appellee.
No. 472A191.
Court of Appeals of Indiana, Third District.
March 13, 1973.
Rehearing Denied April 12, 1973.
*238 H. Richard Miles, Martinsville, Parr, Richey, Obremskey, Pedersen & Morton, Lebanon, for defendant-appellant.
Marcus E. Woods, Paul L. Butt, Charles M. Wells, Jon D. Noland, Barnes, Hickam, Pantzer & Boyd, Indianapolis, for plaintiff-appellee.
HOFFMAN, Chief Judge.
The issue presented by this appeal is one of first impression in this jurisdiction  whether a municipally franchised utility may condemn property of another utility located within a parcel of land which has been annexed into a municipality pursuant to IC 1971, XX-X-XX-XX.1, Ind. Ann. Stat. § 48-727a (Burns 1972 Cum.Supp.).
*239 Inasmuch as the above issue is one of law, the following simplistic explanation of the facts will here suffice:
On April 28, 1971, the Board of Trustees of the Town of Mooresville, Indiana, duly annexed to the town a noncontiguous parcel of land which was the site of the Kendrick Memorial Hospital. Thereafter, appellee-Indianapolis Power & Light Company (IPALCO) filed its complaint to condemn certain electric utility property located within the annexed territory. Defendant-Morgan County Rural Electric Membership Corporation (REMC) appeared by counsel and filed its objections to the complaint of plaintiff-IPALCO.
The trial court overruled the objections of REMC and entered its judgment that plaintiff is entitled to appropriate the property of defendant described in plaintiff's complaint and appointed appraisers to assess the damages that defendant had, or may, sustain by reason of such appropriation. On appeal, REMC assigns as error the decision of the trial court in overruling said objections and appointing appraisers.
Appellant-REMC first contends that the Public Service Commission of Indiana must determine whether public convenience and necessity should allow plaintiff to condemn the annexed territory. In support of this contention REMC cites Decatur County R.E. Mem. Corp. v. Public Service Co. (1971), Ind. App., 275 N.E.2d 857, 28 Ind. Dec. 128 (transfer denied). In that case, a certain parcel of property was annexed which had been served by the public utility since before the incorporation of the REMC. After annexation of the property the REMC sought to enter upon the property to render electric service. The utility sought injunctive relief to prohibit such service by the REMC. On appeal from the granting of a permanent injunction the Appellate Court remanded the case to the Public Service Commission to determine which company had the initial right to serve the property in question. At 862 of 275 N.E.2d, it is stated:
"Once the Commission makes its decision, the parties are free to proceed accordingly. If the Commission finds that the Property was included in Decatur's service territory, then the Company may proceed under I.C. 1971 X-X-XX-XX, Ind. Ann. Stat. § 55-4418a (Burns 1971), and condemn the annexed area. Any other questions concerning the impact and interpretation of Burns § 55-4418a must wait until that statute has been properly brought into play, and that cannot occur until it is determined which party had the initial right to service the Property. Conversely, if the Commission finds that the Property was excluded from Decatur's service territory, the matter is settled and Burns § 55-4418a has no effect." (Footnote omitted.)
The instant case bears no analogy to Decatur. The initial service right by REMC is undisputed. The instant case presents nothing for the Public Service Commission to determine.
The statute with which we are here concerned is IC 1971, X-X-XX-XX, Ind. Ann. Stat. § 55-4418a (Burns 1972 Cum.Supp.), which provides, in pertinent part, as follows:
"Municipality annexing territory served by electric utility  Purchase of property  Condemnation.  Whenever a municipality in which a public utility * * * is rendering electric utility service under a franchise, license or indeterminate permit * * *, annexes additional territory and such annexed territory includes any territory in which the franchised utility was not authorized to render electric utility service immediately prior to such annexation but in which some other public utility * * * was lawfully rendering electric utility service at such time, then the franchised utility and the other utility shall promptly negotiate for the purchase by the franchised utility of the property owned by the other utility within the annexed territory and used and useful by the other utility in or in connection with the rendering *240 of electric utility service therein. In the event that such property has not been purchased by the franchised utility within 90 days after such annexation takes place, then the franchised utility may bring an action in the circuit or superior court of the county where such municipality * * * is located against the other utility, as defendant, for the condemnation of such property of the other utility. Until and unless such purchase or condemnation is effected, the other utility shall have authority to operate within the portion of the annexed territory in which it was lawfully rendering electric utility service immediately prior to such annexation."
Although the above quoted statute is patently clear, REMC contends that legislative intent and public policy militate against permitting condemnation when territory is annexed pursuant to § 48-727a, supra.
In our desire to avoid the evil of judicial legislation we are properly motivated to construe statutes strictly. However, as judges, we should not be expected, or permitted, to be more naive than other men. A court would be remiss to close its eyes to a latent ambiguity in a statute created by legislative history, legislative purpose and the dictates of justice, for these are matters to be considered in interpreting any statute. Woods v. State (1957), 236 Ind. 423, 140 N.E.2d 752.
As stated by the eminent jurist Learned Hand,
"... there is no surer sign of a feeble and fumbling law than timidity in penetrating the form to the substance." Loubriel v. United States (2d Cir., 1926), 9 F.2d 807, at 808.
The primary rule for judicial construction of statutes is to ascertain and effectuate the intent of the Legislature. Roth v. Local Union No. 1460 of Retail Clerks Union (1939), 216 Ind. 363, 369, 24 N.E.2d 280. The intention of the lawmakers constitutes the law. Blackburn et al. v. Koehler, etc. (1957), 127 Ind. App. 397, 400, 140 N.E.2d 763 (transfer denied).
Where the legislative intent is manifest by clear and unambiguous language, the obvious meaning of the statute may not be enlarged or restricted. Knox R.E.M.C. v. Pub. Serv. Co. (1966), 139 Ind. App. 547, 557, 213 N.E.2d 714 (transfer denied). However, where more than one construction is possible, the court may give a statute a practical application and construe it in such a way as to oppose prejudice to public interest. State ex rel. Bynum v. LaPorte Superior Court No. 1 (1973), Ind., 291 N.E.2d 355.
The legislative intent as ascertained from the Act as a whole will prevail over the strict literal meaning of any term used therein. Combs, Auditor, et al. v. Cook (1958), 238 Ind. 392, 151 N.E.2d 144.
A matter found to be within the intention of the Legislature by implication has the same effect as if it were expressed in the statute. State v. Rice (1956), 235 Ind. 423, 134 N.E.2d 219. Even where the language of the statute is technically clear the courts may make minor substitutions where legislation, as enacted, was obviously not within the comprehension of the Legislature and the legislative intent is clear. Woerner, etc. v. City of Indianapolis (1961), 242 Ind. 253, 263-264, 177 N.E.2d 34.
The crucial question in this appeal is whether the term "annexes" used in the first sentence of § 55-4418a, supra, applies to annexations pursuant to § 48-727a, supra.
Historically, a municipality in Indiana only had the power to annex territory which abutted the existing boundaries of the municipality. See IC 1971, XX-X-XX-XX, Ind. Ann. Stat. § 48-727 (Burns 1972 Cum. Supp.). Once territory is duly annexed pursuant to § 48-727, supra, such annexation is permanent in nature, subject only to *241 disannexation proceedings under IC 1971, XX-X-XX-XX through XX-X-XX-XX, Ind. Ann. Stat. §§ 48-922 through 48-928 (Burns 1972 Cum.Supp.).
On April 5, 1971, § 48-727a, supra, was enacted and made immediately effective as emergency legislation. Section 48-727a, supra, provides as follows:
"Annexation of certain noncontiguous areas by towns.  Notwithstanding any other provision in this chapter, the town board of any town may, by ordinance, annex territory which is not contiguous to the boundaries of such town where such territory is declared to be occupied by a municipally owned or regulated sanitary landfill, golf course, hospital or hospital as defined in IC 1971, 16-10 [§§ 42-1448-42-1465, 42-1601-42-1620]; Provided, however, That should the territory so annexed cease to be used or occupied for the purpose of operating a municipally owned or regulated sanitary landfill, golf course, hospital or hospital as defined in IC 1971, 16-10, the area shall cease to be considered annexed to the town and shall revert to the jurisdiction of the unit of government having such jurisdiction prior to annexation."
Annexation under the above quoted statute is conditional. A municipality may only annex noncontiguous, that is, nonabutting, territory, on the condition that it is declared to be occupied for one of the enumerated uses. Moreover, the proviso contained in § 48-727a, supra, causes such annexation to cease by operation of law should the municipal use thereof cease. In such situations the territory automatically reverts to the jurisdiction of the unit of government having jurisdiction prior to annexation. Annexation under § 48-727a, supra, is conditioned on, and its duration is limited to, the existence and continuance of the use of the territory for one of the enumerated purposes.
The purpose of § 55-4418a, supra, was stated by our Supreme Court in Morgan Co. REMC v. PSCI (1970), 253 Ind. 541, at 546, 255 N.E.2d 822, at 825, to be as follows:
"Our interpretation of § 55-4418a best meets with the realities of our society. The growth of municipalities will continue. Such growth of necessity results in annexation. What was once `rural' becomes `urban.' The purpose of the law is to make such growth and transition as fair and in a manner least likely to disrupt service to the public."
The foregoing purpose is furthered only by holding that the term "annexes" in § 55-4418a, supra, does not include annexations under § 48-727a, supra. Section 55-4418a, supra, was enacted in 1935 and last amended by Acts 1953, ch. 48, § 2, p. 153. At all times prior to April 5, 1971, the term "annexation" referred to the unconditional annexation of areas contiguous to the boundaries of a municipality. Growth of cities is, and has always been, limited to the annexation of contiguous territory with the exception of the conditional, nonpermanent type of annexation under § 48-727a, supra. Condemnation of used or useful property of one utility by another utility does not further the orderly transition from rural to urban when such transition is expressly prohibited by statute from being permanent in nature.
Generally, there is a presumption that the Legislature in enacting a particular piece of legislation has in mind existing statutes on the same subject. See: McClarnon v. Stage, Executor (1939), 215 Ind. 157, 162, 19 N.E.2d 252. Here, § 55-4418a, supra, and § 48-727a, supra, deal with entirely different subject-matters, viz., annexation of municipally owned or regulated territory and condemnation of the used or useful property of one utility by another utility. Furthermore, the purpose of such presumption is to aid construction. A court may not indulge in such presumption where to do so would thwart the purpose of the legislation.
*242 We are constrained to hold that the Legislature did not intend the term "annexes" in § 55-4418a, supra, to apply to an annexation conducted pursuant to § 48-727a, supra.
The judgment of the trial court is reversed with instructions to enter judgment for REMC.
Reversed with instructions.
SHARP, J., concurs.
SULLIVAN, J., dissents with opinion.
SULLIVAN, Judge (dissenting).
When the courts are required to construe acts of the Legislature, it is my view that one should start with a problem rather than with an answer.
In the cause before us the majority opinion would appear result oriented. I would not dispute the abstract logic of the result reached. I merely question the prerogative of the judicial arm of government to achieve that salutary effect.
The majority holds, as a matter of law, that the Legislature could not have reasonably intended that Burns § 55-4418a apply to annexations which have been perfected under Burns § 48-727a. I am unable to join my colleagues in this conclusory leap. To the contrary I feel that no matter how desirable the result reached may be, it was obtainable herein solely by "judicial legislation". If the General Assembly did not intend the utility condemnation procedures of Burns § 55-4418a to apply to non-contiguous annexations, they had only to say so. Not only is it improper to ascribe an intention on the part of the Legislature to disassociate the non-contiguous annexations of Burns § 48-727a from utility condemnation procedures despite the fact that Burns § 55-4418a refers to "annexations" without distinguishing, it is perhaps improper to not ascribe the contrary intent. In other words, by making provision for non-contiguous annexations, an intention may be implied that the condemnation procedure extends to all annexations whether of contiguous territory or not.
In construing statutes, it is just as important to recognize what a statute does not say as it is to recognize what it does say. The statute before us, Burns § 55-1418a, does not say that utility condemnation procedures may be employed only where the annexed territory is contiguous.
Only recently our own Supreme Court in State v. Bigbee, 292 N.E.2d 609 (Decided February 23, 1973) appropriately noted that "a statute should not be overly narrowed so as to exclude cases fairly covered by it and should be interpreted so as to give efficient operation to the expressed intent of the legislature."
I do not necessarily disagree with the policy consideration implicit in the decision reached by my brethren. My sentiment, however, was recently articulated eloquently by Chief Justice Burger dissenting in Wheeler v. Montgomery (1970) 397 U.S. 280, 284, 90 S.Ct. 1026, 1028-1029, 25 L.Ed.2d 307:
"I can share the impatience of all who seek instant solutions; there is a great temptation in this area to frame remedies that seem fair and can be mandated forthwith as against administrative or congressional action that calls for careful and extended study. That is thought too slow. But, however, cumbersome or glacial, this is the procedure the Constitution contemplated."
It is not difficult to disguise judicial encroachment upon the legislative process by quotations from legal giants such as the Honorable Learned Hand. The fact is however, that we treat here a clear-cut matter of policy and it has always been my view that creation or implementation of a policy which is to have the force and effect of law is the prerogative of the legislative branch not the judicial.
*243 One of the most discerning interpreters of statutes was Mr. Justice Frankfurter who upon the subject said:
"Judges may differ as to the point at which the line [between omission and purposeful silence] should be drawn but the only sure safeguard against crossing the line between adjudication and legislation is an alert recognition of the necessity not to cross it and instinctive, as well as trained, reluctance to do so."
* * * * * *
"[W]here policy is expressed by the primary lawmaking agency in a democracy, that is by the legislature, judges must respect such expressions by adding to or subtracting from the explicit terms which the lawmakers use no more than is called for by the shorthand nature of language." Frankfurter, Some Reflections On the Reading of Statutes, 47 Columbia Law Rev. 527, 535.
The paragon of "judicial restraint" said further in the same writing:
"[The courts] are confined by the nature and scope of the judicial function in its particular exercise in the field of interpretation. They are under the constrains imposed by the judicial function in our democratic society. As a matter of verbal recognition certainly, no one will gainsay that the function in construing a statute is to ascertain the meaning of words used by the legislature. To go beyond it is to usurp a power which our democracy had lodged in its elected legislature. The great judges have constantly admonished their brethren of the need for discipline in observing the limitations. A judge must not rewrite a statute, neither to enlarge nor to contract it. Whatever temptations the statesmanship of policy-making might wisely suggest, construction must eschew interpolation and evisceration. He must not read in by way of creation. He must not read out except to avoid patent nonsense or internal contradiction." Frankfurter, supra, 47 Columbia Law Review 527, 533.
Another acknowledged giant of judicial scholarship, along with Justices Frankfurter, Brandeis, Holmes and Judge Hand, was Justice Cardozo who appropriate to the matter before us stated:
"We do not pause to consider whether a statute differently conceived and framed would yield results more consonant with fairness and reason. We take this statute as we find it." Anderson v. Wilson (1933) 289 U.S. 20, 27, 53 S.Ct. 417, 420, 77 L.Ed. 1004.
Judge Hand, himself, in considering the treatment of words as contained in legislative enactments paraphrased St. John as follows:
"It is often true, that, not only in the beginning, but at the ending, is the Word." J. Ungar, Inc. v. Commissioner of Internal Revenue (1957 C.A.2d) 244 F.2d 90, 94.
In the case before us, I see no great need  no need at all  to engage in a tortuous attempt to divine legislative intent. To me the words "annexed territory" as used in Burns § 55-4418a are clear and unmistakeable and broach no judicial tampering. I believe that the following quote from Judge Hand in Harris v. Commissioner of Internal Revenue (1949 C.A.2d) 178 F.2d 861, 864, is of moment in the matter here:
"It is always a dangerous business to fill in the text of a statute from its purposes, and, although it is a duty often unavoidable, it is utterly unwarranted unless the omission from, or corruption of, the text is plain."
I cannot bring myself to view the enactment of Burns § 48-727a as indicative of a legislative intent to amend and delimit the scope of Burns § 55-4418a. A well-settled tenet of statutory construction is as stated *244 in Sutherland, Statutory Construction (3d Ed.) § 4510:
"Thus, legislative language will be interpreted on the assumption that the legislature was aware of existing statutes... ."
This general principle has been iterated in many Indiana decisions. See City of Rushville v. The Rushville Natural Gas Co. (1892) 132 Ind. 575 at 581, 28 N.E. 853 and Town of Brownsburg v. Trucksess (1933) 98 Ind. App. 322, 329, 185 N.E. 315.
In the instant case, the majority acknowledges the rule that in enacting legislation the General Assembly is presumed to have in mind existing statutes dealing with the same subject matter but attempts to avoid the principle by concluding that Burns § 47-727a and § 55-4418a deal with "entirely different subject matters." Such conclusion in my view totally ignores the obvious and clearly evident scope and range of each such section. Burns § 48-727a concerns and permits the annexation of non-contiguous territory by municipalities and Burns § 55-4418a concerns the effect of any annexation upon public utility service within the area annexed. Apparently the majority arbitrarily views the former section as an annexation statute and the latter as a public utility condemnation statute. The fact remains however, that the basic ingredient of each provision is "annexation" and that such ingredient or "subject" is common to both statutes. It is my view therefore, that the general rule of statutory construction alluded to above is wholly and clearly applicable and appropriate to the case before us.
I fail to see support for the majority position in the "conditional" vis-a-vis "unconditional" nature of the annexation. First, I do not view annexations pursuant to Burns § 48-727a as "conditional". Rather, I believe that such annexation is final and complete when the ordinance becomes effective but that the area so annexed is subject to disannexation and reverter by operation of law in the subsequent event that the territory ceases being used for the particular purpose described in the statute. When the annexation takes place, rights and duties with respect to the area annexed have become vested with no further condition necessary. Neither contiguous nor non-contiguous annexation is necessarily permanent. A contiguous area can be disannexed pursuant to Burns § 48-922 et seq. Thus, such an area is no more permanent than an area annexed under Burns § 48-727a and which becomes disannexed by the cessation of use for a hospital, etc. But more importantly, "conditional" or not, "unconditional" or not, the territory annexed pursuant to Burns § 48-727a is territory annexed to and which thereby becomes a part of the annexing municipality. It is therefore within the clear and unmistakeable purview of Burns § 55-4418a.
Additionally, I deem the limitations necessarily placed upon the growth of a municipality by the majority opinion here to be in contravention of not in furtherance of the purpose of Burns § 55-4418a as set forth in Morgan County REMC v. PSCI (1970) 253 Ind. 541, 255 N.E.2d 822, and as quoted by my colleagues. Certainly, a municipality is benefited and is made to grow recreationally, and in health and sanitary services by annexations made pursuant to Burns § 48-727a. An area becomes urban rather than rural, as espoused by the Morgan County REMC case, not primarily by its contiguous physical proximity to the former legal boundaries of the municipality but rather by virtue of the improvement or creation of conveniences and services made possible only through the municipal government.
Citation of and reliance upon State v. Rice (1956) 235 Ind. 423, 134 N.E.2d 219 by the majority is misplaced. The Rice case involved construction of a statutory clause which the court specifically noted was ambiguous. The statutory language which we here consider is, quite to the contrary, clear and unambiguous. It is not subject to construction by attempting to divine *245 the intention of the legislature by implication.
Particularly persuasive in this regard is Onward Corporation v. National City Bank of Evansville (1973 Ct.App.) 290 N.E.2d 797, wherein the First District of this Court noted:
"In the construction of statutes, we are governed by IC 1971, 1-1-4-1, Ind. Ann. Stat. § 1-201 (Burns 1967), which provides in pertinent part as follows:
`The construction of all statutes of this state shall be by the following rules, unless such construction be plainly repugnant to the intent of the legislature or of the context of the same statute:
First. Words and phrases shall be taken in their plain, or ordinary and usual, sense. But technical words and phrases having a peculiar and appropriate meaning in law shall be understood according to their technical import.'
"Indiana case law is in harmony with the above. In Meade Electric Co. v. Hagberg (1959), 129 Ind. App. 631, 159 N.E.2d 408, this court, quoting a Pennsylvania case with approval, said:
`We think it is always unsafe to depart from the plain and literal meaning of the words contained in legislative enactments out of deference to some supposed intent, or absence of intent, which would prevent the application of the words actually used to a given subject. Such a practice is really substituting the theories of a court, which may, and often do, vary with the personality of the individuals who compose it, in place of the express words of the law as enacted by the law making power. It is a practice to be avoided. It has been condemned by many test-writers and by many courts. Occasionally it has been departed from, but the path is a devious and a dangerous one, which ought never to be trodden, except upon considerations of the most convincing character and the gravest moment.'
"In a more recent case, Grody v. State (1972), Ind., 278 N.E.2d 280, our Supreme Court held that where a statute is plain and unambiguous, there is no need for construction, and the plain meaning must be given the statute."
The majority I think acknowledges the weakness in its position by citing Woerner v. City of Indianapolis (1961) 242 Ind. 253, 177 N.E.2d 34 for the proposition that even when statutory language is clear and unambiguous, courts may make "minor substitutions where legislation, as enacted, was obviously not within the comprehension of the Legislature and the legislative intent is clear." (My emphasis) A reading of the Woerner case readily demonstrates its material factual difference, i.e., "a clerical or typographical error", and inapplicability to the facts before us. See also State ex rel. 1625 E. Washington Realty Co. v. Markey (1937) 212 Ind. 59, 7 N.E.2d 989. Be that as it may, with respect to the statutory provisions here considered, the construction placed thereon by the majority is not a "minor substitution" but rather is surgery and amputation of major proportions. Further, in light of well established law, it is wholly improper to assume that the Legislature did not comprehend the effect of its enactment in 1971 of Section 48-727a on existing law, e.g., § 55-4418a. Further, it is far from clear that the Legislature intended to amend § 55-4418a by impliedly inserting therein the word "contiguous" at every point in the provision which refers to the territory annexed by the municipality. To be sure I would not deign to imply that the legislative intent is clearly to the contrary. I say only that the rules of construction require that we abstain in this instance and that if the Legislature desires that the condemnation provisions of our Public Utility law not apply to noncontiguous territory annexed by a municipality, they have only to speak to the matter.
*246 It should be further noted that the court, in both the Woerner and Markey cases, supra, were concerned with statutory provisions which, unless construed as done by the court, would either be inoperative or produce an absurd result (see Woerner, supra, 242 Ind. at 260) or would be contradictory to the purpose of the act itself. (See State, etc. v. Markey, supra, 212 Ind. at 63-66, 7 N.E.2d 989). We are not here confronted with such a dilemma. To the contrary, I believe that the construction espoused in this opinion is dictated by the clear and unambiguous language of Burns § 55-4418a itself and that the construction espoused by the majority creates from thin air an ambiguity in Burns § 55-4418a and then without decisional or statutory authority in support thereof, fabricates and conjures a supposed "legislative intent" to resolve the ambiguity and justify its result. As Justice Frankfurter noted, dissenting in D.A. Schulte, Inc. v. Gangi (1946) 328 U.S. 108, 121-122, 66 S.Ct. 925, 932, 90 L.Ed. 1114:
"For purposes of judicial enforcement, the `policy' of a statute should be drawn out of its terms, as nourished by their proper environment, and not, like nitrogen, out of the air."
I would affirm.