**Shirley A. SHIDELER and Barnes, Hickam, Pantzer & Boyd, Defendants-Appellants,**

v.

**Mary Catherine DWYER, Plaintiff-Appellee.**

No. 1-1078A297.

Court of Appeals of Indiana, First District.

March 20, 1979.

Rehearing Denied April 30, 1979.

Alvin E. Meyer, Richard L. Gilliom, Stewart, Irwin, Gilliom, Fuller & Meyer, Indianapolis, Lineback & Lewis, P. C., Greenfield, for defendants-appellants.

Jon R. Pactor, Indianapolis, for plaintiff-appellee.

LOWDERMILK, Judge.

### STATEMENT OF THE CASE

Defendants-appellants Shirley A. Shideler (Shideler) and Barnes, Hickam, Pantzer & Boyd (Barnes, Hickam) bring this appeal after the Hancock Circuit Court denied their motion for summary judgment. They contend that the professional malpractice action brought by plaintiff-appellee Mary Catherine Dwyer (Dwyer) is barred by statutes of limitation set forth in IC 1971, 34–4–19–1 (Burns Code Ed.) and IC 1971, 34–1–2–2 (Burns Code Ed.).

### FACTS

Shideler is a partner in the law firm of Barnes, Hickam. In 1973 Shideler prepared a Will for Robert P. Moore. Moore, who executed the Will on October 8, 1973, died on December 14, 1973. Moore's Will, which was admitted to probate on December 21, 1973, included the following provision:

"Clause 7.1(c); *Provision for Mary Catherine Dwyer.* I specifically direct Dominic L. Angelicchio to use his best efforts,

as long as he owns any shares of stock of Moorfeed Corporation, to cause the Corporation to continue the employment of Mary Catherine Dwyer until her retirement or her other service termination date. In addition, as long as he owns any shares of stock of Moorfeed Corporation until her retirement or other service termination date, then from and after such date and until her death, or the death of Dominic L. Angelicchio prior thereto, Dominic L. Angelicchio shall cause the Corporation to pay Mary Catherine Dwyer as a retirement benefit the sum of $500 per month." (Original emphasis)

Dwyer decided to terminate her employment in the fall of 1974. Her attorney discussed Clause 7.1(c) in Moore's Will with Shideler, who was then serving as attorney for Moore's estate. The estate and Angelicchio[1] took the position that Dwyer would have to meet the qualifications set forth in the profit-sharing plan of Moorfeed Corporation before she would be eligible for any benefits provided by Clause 7.1(c) of Moore's Will. Nevertheless, Dwyer submitted her resignation effective October 31, 1974.

When Dwyer did not receive a payment for November 1974, she filed her petition on November 13, 1974, asking the Marion County Probate Court to construe the Will of Robert P. Moore. The Probate Court entered its decree on June 30, 1975, and held that Clause 7.1(c) of Moore's Will was

" . . . null and void and of no effect because of its impossibility of performance. The language in said Clause 7.1(c) is merely precatory language. Such Clause 7.1(c) is directed to a corporation and a stockholder of such corporation cannot cause the corporation to perform the acts set out in said clause."

Dwyer filed her action against Shideler and Barnes, Hickam on June 29, 1977. She alleged, inter alia, that Robert P. Moore had

intended for Dwyer to receive $500 per month in addition to other retirement benefits, and that Shideler and Barnes, Hickam, who prepared the Will for Moore, knew or should have known that Clause 7.1(c) would be held void.

Shideler and Barnes, Hickam ultimately filed their motion for summary judgment, which the trial court denied.

## ISSUES

The following issues have been certified to this court for consideration, pursuant to Ind.Rules of Procedure, Appellate Rule 4(B)(5):

1. Is Dwyer's action barred by the statute of limitations set forth in IC 34–4–19–1?

2. Is Dwyer's action barred by the statute of limitations set forth in IC 34–1–2–2?

3. Do genuine issues of material fact exist in the case at bar?

*Issue One*

Shideler and Barnes, Hickam contend that Dwyer's action is barred by IC 34–4–19–1:

"Malpractice—Limitation of actions.— No action of any kind for damages, whether brought in contract or tort, based upon professional services rendered or which should have been rendered, shall be brought, commenced or maintained, in any of the courts of this state against physicians, dentists, surgeons, hospitals, sanitariums, or others, unless said action is filed within two [2] years from the date of the act, omission or neglect complained of. . . ."

In *Cordial v. Grimm* (1976), Ind.App., 346 N.E.2d 266, Judge Hoffman held that the preceding statute is not limited to medical malpractice actions and does apply to malpractice actions brought against members of the legal profession. Judge Staton con-

---

1. Shideler and Barnes, Hickam note in their brief at page 14: "Angelicchio informed Dwyer prior to her resignation that it was the opinion of an attorney for the personal representatives of Moore's estate, whom Angelicchio had con-

sulted, that Dwyer would not be entitled to any payments under Clause 7.1(c) of the Will should she carry out her intention to resign *at that time*." (Our emphasis)

curred in the result reached in the case, and Judge Garrard concurred in the result but expressly stated that he did so without reaching the issue of whether IC 34–4–19–1 is applicable to malpractice claims brought against members of the legal profession.[2]

The appellant in *Cordial v. Grimm, supra,* argued that the specific words of the statute—"physicians, dentists, surgeons, hospitals, sanitariums"—prevented the general words—"or others"—from encompassing non-medical professionals. In rejecting this argument, Judge Hoffman quoted, at page 271 of 346 N.E.2d, from *Kidwell v. State* (1967), 249 Ind. 430, 432, 230 N.E.2d 590:

"'Under the doctrine of *Ejusdem Generis,* when words of specific or limited signification in a statute are followed by general words of more comprehensive import, the general words are construed to embrace only such things as are of like kind or class with those designated by the specific words, unless a contrary intention is clearly expressed. *Short v. State* (1954), 234 Ind. 17, 122 N.E.2d 82 and cases cited therein.

'But *Ejusdem Generis* is not a doctrine of mandatory application. It is merely one method available for determining the legislative intent in connection with a statute. *Woods v. State* (1957), 236 Ind. 423, 140 N.E.2d 752. The only purpose of *Ejusdem Generis* is to aid the courts in determining the true meaning of a statute. It should not become a device for unduly narrowing the scope and operation of statutes to an extent never envisioned by the General Assembly. *Sherfey v. City of Brazil* (1938), 213 Ind. 493, 13 N.E.2d 568.

'Too often it seems the doctrine is employed judicially to exclude cases from the scope of a statute when the language of the statute is clearly applicable to them. In other words the doctrine is often used to obviate legislative intent under the guise of judicial interpretation.' Similarly, see, *Woods v. State* (1957), 236 Ind. 423, 427–28, 140 N.E.2d 752, 753–54."

We, of course, agree that the doctrine is misused when it is used to obviate legislative intent. In *Kidwell v. State, supra,* the appellant was relying upon the doctrine when he argued that a knife was not included within the meaning of "any dangerous or deadly weapon" when the general words were included in the following phrase: "pistol, revolver, rifle, shotgun, machine gun or any other firearm or any dangerous or deadly weapon." Likewise, in *Woods v. State* (1957), 236 Ind. 423, 140 N.E.2d 752, the appellant relied upon the doctrine in an effort to limit the proscriptions of a criminal statute.

The fact remains, however, that the doctrine is available for a proper use in aiding the courts in determining the true meaning of a statute. In IC 34–4–19–1 the legislature listed physicians, dentists, surgeons, hospitals, and sanitariums; all of these are related to medical care. If the legislature had intended the statute to apply to malpractice cases brought against attorneys, we are confident that either it would have omitted its listing altogether or it would have included attorneys in its listing.[3]

2. Judge Hoffman concluded that Cordial's claim was barred by both IC 34–1–2–2 and IC 34–4–19–1.

3. Judge Hoffman suggests in *Cordial v. Grimm* (1976), Ind.App., 346 N.E.2d 266, 272, that the legislature was attempting to broaden the term "malpractice" by providing its listing in the statute:

"As to what actions are predicated upon 'malpractice' so as to fall within the ambit of IC 1971, 34–4–19–1, *supra,* the common law definition of such word is stated in *Richardson v. Doe* (1964), 176 Ohio St. 370, 199 N.E.2d 878, 879, 8 A.L.R.3d 1331. Therein,

the Ohio Supreme Court held that although the term 'malpractice' is sometimes loosely used to refer to the negligence of any professional group, it is still technically and legally limited to the professional misconduct of the licensed, learned members of the Bar and the medical profession. *Accordingly, the application of IC 1971, 34–4–19–1, supra, must be construed to be so limited, save for the exceptions enumerated therein.*" (Our emphasis)

Certainly physicians and surgeons would be recognized as members of the medical profession and would not belong in any listing of "exceptions."

We hold that Dwyer's action is not barred by IC 34–4–19–1.

*Issues Two and Three*

Shideler and Barnes, Hickam contend that Dwyer's action is barred by IC 34–1–2–2:

> "The following actions shall be commenced within the periods herein prescribed after the cause of action has accrued, and not afterwards.
>
> First. For injuries . . . . to personal property, . . . within two [2] years . . . ..
>
> * * *"

In order to resolve this issue, we must determine when Dwyer's cause of action against Shideler and Barnes, Hickam accrued.

Shideler and Barnes, Hickam provide guidance for making this determination by setting forth certain fundamental rules: "A cause of action accrues, so that limitations begin to run, at the moment its owner has a legal right to sue on it . . . .." *Fidelity & Casualty Co. v. Jasper Furniture Co.* (1917), 186 Ind. 566, 568, 117 N.E. 258. " . . . the accrual of a cause of action . . . depends upon the uniting of at least two elements—injury and damages." *Montgomery v. Crum* (1928), 199 Ind. 660, 678, 161 N.E. 251, 259.

Our Supreme Court provided a helpful explanation of the terms "injury" and "damages" in *City of North Vernon v. Voegler* (1885), 103 Ind. 314, 318–19, 2 N.E. 821, 824:

> "There is a material distinction between damages and injury. Injury is the wrongful act or tort which causes loss or harm to another. Damages are allowed as an indemnity to the person who suffers loss or harm from the injury. The word 'injury' denotes the illegal act, the term 'damages' means the sum recoverable as amends for the wrong. The words are sometimes used as synonymous terms, but they are, in strictness, words of widely different meaning. . . .
>
> In every valid cause of action two elements must be present—the injury and the damages. The one is the legal wrong which is to be redressed, the other the scale or measure of the recovery. Mayne Dam. 1; 1 Sutherland Dam. 3. As there may be damages without an injury, so there may be an injury without damages. It has been many times said that no action will lie because the injury produced no damages, or, as the law phrase runs, the wrong is *injuria sine damno.*
>
> * * *"

■ Shideler and Barnes, Hickam contend that any injury caused by them must have occurred no later than the date of Moore's death, after which time Moore's Will could not be changed; or the date the Will was admitted to probate, at which time the Will became an effective legal instrument. In applying the definition provided in *Voegler, supra,* to the facts of the case at bar, we hold that the injury, i. e., the allegedly wrongful act, occurred at the time Shideler and Barnes, Hickam prepared the final draft of the Will.

In *Board of Commissioners v. Pearson* (1889), 120 Ind. 426, 428, 22 N.E. 134, Pearson alleged that a public bridge had been negligently constructed of unsafe and unsuitable materials. The Board of Commissioners argued that the statute of limitations barred any action for negligence in construction of the bridge. Our Supreme Court wrote:

> "The appellee's cause of action did not accrue until he was injured, and, although the defendant's negligence runs back to 1871, the action is not barred by the statute of limitations. The two elements of the appellee's cause of action are the legal injury and the *resulting damages. City of North Vernon v. Voegler,* 103 Ind. 314, 2 N.E. 821. The statute did not begin to run until the right of action accrued, and this did not accrue until the two elements came into existence. There is, therefore, no force in the argument that the acts of negligence were committed in 1871, and that the statute then commenced to run, notwithstanding the fact that the appellee was not injured until 1884.

\* \* \* " (Our emphasis)

Shideler and Barnes, Hickam argue that, based upon the allegations of Dwyer, Dwyer suffered harm commencing November 1974 when she was denied the first monthly payment she sought.

It is undisputed that Dwyer terminated her employment as of October 31, 1974, she requested payment in November 1974 of the $500 specified in the Will, and she did not receive the payment. Why was she denied the payment? What was the proximate cause of her harm?

■ Proximate cause is a question of fact usually determined by the trier of fact. Proximate cause becomes a question of law for the trial court only when the facts are undisputed and lend themselves to a single inference. *Department of Commerce v. Glick* (1978), Ind.App., 372 N.E.2d 479.

In the case at bar, Dwyer charges Shideler and Barnes, Hickam with having negligently prepared a Will with a void provision. If the particular overt act was not the proximate cause of the harm Dwyer suffered in November 1974, then (a) the loss of payment was not *resulting damages* of the overt act with which Dwyer now charges Shideler and Barnes, Hickam, and (b) the statute of limitations for the present action did not commence to run.

The brief of Shideler and Barnes, Hickam strongly suggests that no one denied any payments to Dwyer in November 1974 because Clause 7.1(c) was void. As stated previously, however, proximate cause must be determined by the trier of fact in a case such as this.

In *Pearson, supra,* the alleged act of negligence occurred in 1871, but the statute of limitations did not commerce to run until *that act* caused harm. In the case at bar, the alleged act of negligence occurred in 1973, but the statute of limitations did not commence to run until *that act* caused Dwyer harm. The trier of fact must determine the proximate cause of the denial of payments in November 1974 before anyone

can determine whether IC 34–1–2–2 bars the present action.

Shideler and Barnes, Hickam carefully explained that Dwyer had knowledge of all relevant facts for more than two years prior to her filing this lawsuit. Her knowledge of facts, however, did not warrant her filing a lawsuit if she had not been harmed by the allegedly negligent act with which she now charges Shideler and Barnes, Hickam.

In *Price v. Holmes* (1967), 198 Kan. 100, 422 P.2d 976, Holmes prepared a Will for Weber. By the terms of the Will, Price would receive one half of Weber's estate. The Will was admitted to probate. Weber's widow contested the Will. Two lower courts ruled that the Will was valid. The Kansas Supreme Court held that the Will was void because it had not been executed properly. Price brought an action against Holmes. In its opinion, the Kansas court provided a helpful analysis of the question of when Price's cause of action against Holmes accrued. We quote that court's conclusion, found at page 980 of 422 P.2d:

"  . . . we are constrained to hold that any cause of action existing against Holmes for negligence accrued when this court declared Weber's will void on December 7, 1963. That was the date on which the ground fell from under Lillian Price  . . .."

■ In *Price, supra,* at page 981 of 422 P.2d, the court recognized the fact that "  . . . had no contest of Weber's will developed, Lillian Price would have sustained no such damages as plaintiff now claims." In the case at bar, Dwyer would have sustained no such damages as she now claims if Moore's Will had been construed as she desired. Instead, the Marion County Probate Court ruled that Clause 7.1(c) of Moore's Will was void; and it was on that date, June 30, 1975, that the ground fell from under Mary Catherine Dwyer. She filed the present action against Shideler and Barnes, Hickam on June 29, 1977. Her cause of action is not barred by IC 34–1–2–2 if the overt actions charged herein were

not the proximate cause of the harm she suffered prior to the time that the provision was held void.[4]

■ Ordinarily, an order denying a motion for summary judgment is not an appealable interlocutory order. Ind.Rules of Procedure, Trial Rule 56(E); *Pitts v. Woolbridge* (1974), 161 Ind.App. 404, 315 N.E.2d 736. Shideler and Barnes, Hickam attempted a monumental task in appealing the denial of their motion.

In *St. Joseph Bank & Trust Co. v. Wackenhut Corp.* (1976), Ind.App., 352 N.E.2d 842, 845, this court quoted from *Pierce v. Ford Motor Co.* (4th Cir. 1951), 190 F.2d 910, 915, *cert. den.*, 342 U.S. 887, 72 S.Ct. 178, 96 L.Ed. 666:

"  .   .   . It is only where it is perfectly clear that there are no issues in the case that a summary judgment is proper. Even in cases where the judge is of opinion that he will have to direct a verdict for one party or the other on the issues that have been raised, he should ordinarily hear the evidence and direct the verdict rather than attempt to try the case in advance on a motion for summary judgment, which was never intended to enable parties to evade jury trial or have the judge weigh evidence in advance of its being presented.   .   .   ."

■ The date on which a cause of action accrues and a statute of limitation commences running is generally a question of fact for the jury. *Montgomery v. Crum, supra; Winston v. Kirkpatrick* (1941), 110 Ind.App. 183, 37 N.E.2d 18.

"Proximate cause is an issue of fact whenever reasonable men could differ concerning the issue." *St. Joseph Bank & Trust Co. v. Wackenhut Corp., supra,* at page 845 of 352 N.E.2d.

This court noted in *McGinnis v. Public Service Co. of Indiana, Inc.* (1974), 161 Ind. App. 1, 4–5, 313 N.E.2d 708:

"If there be any doubt as to the existence of a genuine issue of material fact, such doubt must be resolved against the party moving for summary judgment.

.   .   .

In cases where the facts are not in dispute summary judgment nevertheless is not proper where there is a good faith disagreement as to the inferences to be drawn from such facts.

' "  .   .   . the party opposing the motion is required to show only that there is a genuine issue to be tried and not that he will prevail at the trial . . . ." ' *Wozniczka v. McKean et al.* (1969), 144 Ind.App. 471, 497, 247 N.E.2d 215, 229.

* * * " (Citations omitted)

The trial court determined that the motion should be denied and the evidence should be heard. We hold that the trial court did not err when it denied the motion for summary judgment filed by Shideler and Barnes, Hickam. This cause is remanded to the trial court for further proceedings.

LYBROOK, P. J., and ROBERTSON, J., concur.

4. We have carefully considered each of the arguments presented by Shideler and Barnes, Hickam, and we have consulted the authorities they cite. Each of the arguments, however, assumes that the denial of payments in 1974 was proximately caused by the overt act of drafting a Will with a void provision. The record does not support this basic premise; at best, a genuine issue of material fact exists and makes summary judgment improper. Because we do not accept this basic premise, we deem it unnecessary to respond to each of the arguments presented.